**Roosevelt L. SMITHERS, Plaintiff**

v.

**C & G CUSTOM MODULE HAULING, Eustaquio Vallejo, Eddie Cook and Steve Geiselbrecht, Defendants.**

**Civil Action No. 3:99CV633.**

United States District Court, E.D. Virginia.

April 25, 2000.

## MEMORANDUM OPINION

DOHNAL, United States Magistrate Judge.

This matter is before the Court on several pre-trial motions, including a motion for summary judgment on behalf of all the Defendants. All of the motions have been fully briefed and argued by counsel for the parties and the issues involved are therefore ready for resolution in advance of trial. The various motions *in limine* will be addressed in light of the Court's denial (by separate Order) of the Defendants' motion for summary judgment which is premised on the resolution of one or more of the motions *in limine*.

### Relevant Facts

This case involves a personal injury action brought by the Plaintiff, Roosevelt L. Smithers, to recover for injuries he suffered as a result of a collision between a GMC truck (the plaintiff vehicle) in which he was riding as a passenger and a Peterbilt tractor trailer cab and bed assembly on which rested an empty container (cotton module) which was being used to haul raw cotton from field to gin. The case is in federal court on the basis of diversity jurisdiction. The Peterbilt was being driven by the Defendant Vallejo (defendant driver) in a westerly direction on Route 460 in Southampton County, Virginia in the early morning hours (around 5:30 a.m.) of Monday, November 24, 1997. The plaintiff vehicle, which was traveling on the same highway in the same direction, was being operated by a Brian Heath who perished in the subject accident. The defendant vehicle weighed approximately 32,500 pounds and the maximum speed allowed by permit restriction for such a vehicle was 45 miles per hour in the area of the accident. The defendant vehicle had a ser-

ies of at least four regulation-size taillights on the rear of the bed assembly as well as two reflectors near the area of the upper taillights and reflective tape on a lower bumper. Forensic evidence indicates that all lights were on at time of impact and laboratory analysis confirms that either the brake lights or "flashers" were on at impact or immediately beforehand. The defendant driver denied in deposition, however, that he had engaged either set of such lights.[1]

The defendant driver was operating the defendant vehicle alone and he admits that he was in the process of slowing down immediately before impact in order to look at the adjoining field to determine whether the ground was dry enough to return at a later time to pick up a load of cotton. There is no evidence he was intending to turn into the field at the time of the accident. The highway is a paved, four lane road where the accident occurred with two lanes in each direction that are divided by a yellow line without any median. The highway was dry at the time of the accident and there was an unobstructed view from an easterly direction of the accident scene of at least 1000 feet and perhaps as much as 1200 to 1400 feet ahead of a "dip" in the pavement that may have caused some hindrance in visibility to the west from that point. There is a dispute as to whether there was what is best described as "patchy fog" in the general area of the accident scene. However, there is nothing to indicate that there was any such visual impairment in the immediate area at the time of the accident other than the deposition testimony of one individual (Grizzard) that he saw what he described as misty conditions within 200 to 300 yards of the accident scene some thirty to fifty minutes

---

1. However, according to the investigating officer (Trooper Hall), Vallejo said at the scene that he had his turn signal on.

after the accident occurred. Even so, he also testified that he could see through and over the weather condition, whatever it was.

The plaintiff vehicle was a Class 6 truck which was a smaller commercial vehicle than the defendant vehicle. There is no evidence to establish the exact or even approximate weight of the plaintiff vehicle as of the time of the accident and it could have weighed between 9450 pounds and possibly more than 26,000 pounds. The plaintiff driver (Heath) and Mr. Smithers were engaged in the course of their employment making various product deliveries at the time of the accident. They were en route from the Tidewater, Virginia area to Petersburg, Virginia, having started out from Richmond late the previous evening.

The accident occurred when the plaintiff vehicle struck the defendant vehicle from the rear. There is no indication that the plaintiff vehicle "braked" before impact. On impact, the front portion of the plaintiff vehicle was forced under the rigid conveyor belt assembly of the defendant vehicle. Known as an "underride," the force of the collision caused the front of the plaintiff vehicle to go down into the pavement, after which it traveled at an angle while virtually impaled on the defendant vehicle onto the graveled berm, breaching a slight ditch until both vehicles came to rest in the soft earth and grass of the adjoining cotton field some seventy-five to seventy-eight feet from the estimated point of impact. There was no evidence that the two trucks separated at any point after initial impact.

The only surviving witnesses to the accident are the defendant driver, Mr. Vallejo, and the plaintiff passenger, Mr. Smithers. Mr. Vallejo, apparently in a state of stress that was compounded by language difficulties, told investigating officers at the scene that he had slowed his vehicle down to between 45 and 50 miles per hour [2] just before impact when he noticed the headlights of the plaintiff vehicle rapidly approaching in the same lane from about one-half to three-quarters of a mile behind him. Mr. Smithers at first stated he did not remember anything before impact other than hearing the sound of the ensuing crash,[3] but he later testified in deposition that he did notice "something" immediately before impact that was either moving very slowly or had stopped. He could not remember being able to discern the shape or size of whatever it was and he did not recall seeing any lights.

### Defendants' Motions In Limine

The following motions were filed by the Defendants and are addressed *ad seriatim* without any significance as to the order of resolution.

**Motion *in limine* to exclude proposed expert testimony as to pre-impact speed of defendant vehicle and related issues**

The Plaintiff seeks to offer expert testimony to establish a low pre-impact speed of the defendant vehicle (7–12 mph) to justify an ultimate conclusion by the fact finder that the defendant vehicle obstructed traffic so as to proximately cause the accident. The expertise involved concerns the use of what is generally known as momentum analysis with an emphasis on related applications such as the conserva-

---

2. He later stated in deposition that he had slowed his vehicle to approximately 40 mph. The Court notes that because Mr. Vallejo's deposition was taken in Spanish and transcribed in English at the time of the hearing, he had neither read nor endorsed the transcript of his deposition testimony.

3. The Plaintiff was not interviewed by investigating officers until some fourteen (14) months after the accident, presumably because of the nature and extent of his injuries that included closed-head trauma.

tion of liner momentum and "point physics" which is the determination of distances traveled from point of impact to point of rest, taking into consideration the effect of various "drag factors" or coefficients of friction that eventually cause objects such as vehicles to stop. The Plaintiff has presented the reports, deposition and hearing testimony of Mr. Stephen B. Chewning, an acknowledged expert in the area of accident reconstruction whom the Defendants do not contest is also qualified to offer opinions involving momentum analysis in this case. The Defendants have challenged the reliability of Chewning's proposed expert trial testimony by the cross examination of Chewning and by offering the opinions of its own expert, Roland Ruhl, Ph.D.

The Defendants argue that Chewning's opinion on the crucial issue of the pre-impact speed of the defendant vehicle is not sufficiently based on sound application of the accepted scientific principles involved to be considered reliable enough to aid the fact finder as required for admissibility under Fed.R.Evid. 104(a) and 702 as well as relevant case precedent. Chewning also offered an expert opinion that the severe damage to the plaintiff vehicle "clearly shows" a significant pre-impact speed differential between the two

vehicles so as to bolster his estimate of low pre-impact speed of the defendant vehicle and he further asserts that the latter circumstance resulted in a very short, "no escape" perception/reaction time frame in which the plaintiff vehicle driver (Heath) could have avoided the accident. However, the focus of attention is clearly on the issue of the determination of the pre-impact speed of the defendant vehicle which, if deemed unreliable, also adversely affects any opinion regarding a lack of sufficient time for the plaintiff driver (Heath) to have reacted. Moreover, the Court understands Chewning's opinion concerning "speed differential" to be no more than a "could be" conclusion which, at the very least, is not sufficiently helpful to assist the fact finder so as to be admissible.[4] The Court also finds as more persuasive in any event the opinion of the defense expert, Dr. Ruhl, on the issue of speed differential to the effect that the extreme damage to the plaintiff vehicle was caused in large part by the relatively weak superstructure of the plaintiff vehicle (soft aluminum and/or fiberglass) being impaled upon and driven down and under the rigid, far stronger assembly of the defendant vehicle.[5]

Fed.R.Evid. 104 and 702 as well as relevant case law require a federal court

---

4. Mr. Chewning also opined that additional or different lighting on the defendant vehicle may have been better, but the Court understands that Mr. Chewning does not assert that the lighting that was in operation fell below any acceptable minimal standard in any event and therefore the Court finds that such an opinion would not be helpful in assisting the fact finder.

5. Interestingly, Chewning essentially reached the same conclusion in an initial report which he prepared for the insurance carrier for the defendant employer before he was retained on behalf of the Plaintiff. (Chewning Rept. 3/19/98, Chewning Ex. 1, § 6.1 at 8.) Chewning's explanation at the hearing concerning

any discrepancies between the initial report and the subsequent one he prepared for the Plaintiff (Report of 12/28/99) was, in effect, that he was asked "to go farther" and had the opportunity to do so in regard to the second set of findings. Though the Court is willing to accept the explanation with regard to refinements of previously qualified opinions or logical extensions of earlier positions, the difference here is more one of direct contradiction. If nothing else, Chewning's initial opinion could have (and should have) been qualified to allow for his subsequent conclusions based on other specified factors he did or did not have the opportunity to initially observe and/or sufficiently analyze.

to, in effect, "screen" proposed expert evidence to insure that it is sufficiently reliable and likely to assist the fact finder in order to be admissible at trial. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 592–97, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *see also Cavallo v. Star Enter.*, 892 F.Supp. 756, 761 (E.D.Va.1995), *aff'd in part rev'd in part and remanded*, 100 F.3d 1150 (4th Cir.1996), *and cert. denied*, 522 U.S. 1044, 118 S.Ct. 684, 139 L.Ed.2d 631 (1998). A court's obligation is described as that of a "gatekeeper" in the preliminary determination of the admissibility of expert testimony. *Daubert*, 509 U.S. at 597, 113 S.Ct. 2786. Under *Daubert*, such a role for a court is appropriate, given the potential for expert evidence to "... be both powerful and quite misleading." 509 U.S. at 595, 113 S.Ct. 2786. The holding in a recent case from this Circuit is quite telling in regard to a court's proper role in determining the admissibility of expert evidence as viewed under the circumstances of this case:

> While there are certainly times when, given the complexity of issues or the ferocity of the debate, it may seem expedient just to let opposing experts do battle at trial, the Supreme Court has made clear that to do so, without due circumspection, would be shirking my duty as evidentiary "gatekeeper" to the trial process.

*Hartwell v. Danek Medical Inc.*, 47 F.Supp.2d 703, 711 (W.D.Va.1999).

■ The required procedure for the court is not the same as that for considering a motion for summary judgment in which the evidence is to be considered in the light most favorable to the non-moving party; rather, the court is obliged to analyze the proposed evidence and exclude it if the theory *or technique* utilized is not sufficiently reliable in a sense of "scientific validity" ("ground[ed] in the methods and procedure of science") so as to be capable of assisting the fact finder. *Daubert*, 509 U.S. at 590, 113 S.Ct. 2786; *United States v. Dorsey*, 45 F.3d 809, 813 (4th Cir.), cert. denied, 515 U.S. 1168, 115 S.Ct. 2631, 132 L.Ed.2d 871 (1995); *Cavallo*, 892 F.Supp. at 760–61.[6] A valid scientific theory misapplied because of the lack of sufficient factual foundation cannot be admitted because it does not assist and, indeed, may ultimately confuse the fact finder.

■ The "science" of momentum analysis and the related theories at issue in this case are well-tested, commented upon, verified, and accepted. However, the Court does not have sufficient confidence that such theories were properly applied by the Plaintiff's expert to the facts of this case in order to admit his various opinions, especially as concerns the all-important issue of the pre-impact speed of the defendant vehicle. Among the Court's concerns is the fact that Chewning effectively discounts several variables that *may* not have made a difference in the ultimate outcome of his analysis, but his discounting of them (which was fatal in the opinion of the defense expert) creates enough of a doubt as to the overall reliability of Chewning's ultimate opinions as to render them inadmissible. For example, Chewning's analysis utilizes the same and among the lowest drag and friction coefficients for the travel of the defendant vehicle after impact, even though the two vehicles traversed different surfaces including pavement, gravel, earth and grass. In addition, Chewning could

---

**6.** In addition, the proposed evidence must logically "fit" within the framework of relevancy to the particular issues involved because "scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes." *Daubert*, 509 U.S. at 591, 113 S.Ct. 2786; *Cavallo*, 892 F.Supp. at 761.

not provide an acceptable explanation for his failure to consider the fact that the two vehicles traveled together at an angle after impact.

The Court accepts the opinions of the Defendants' expert which operate to neutralize the expert testimony offered by Chewning by persuasively establishing that Chewning did not properly account for several important variables and that others simply cannot be accounted for or quantified within the ambit of reliable science so as to allow for any meaningful conclusions by the fact finder based on Chewning's input, e.g., consideration of "drag" factor over different surfaces following "underride" effect of off-center impact between vehicles as it relates to co-linear momentum analysis. Perhaps the best example of the Court's concern for the reliability of the plaintiff expert's analysis is the assertion by the defense, supported by its own qualified expert, Dr. Ruhl, that the application of the methodology used by Chewning results in the impossible conclusion that the plaintiff vehicle was going faster *after* the impact than the defendant vehicle. Chewning agrees, but attempts to explain away the criticism by indicating the difference is within an acceptable margin of error of some five (5) miles per hour. (Chewning Ex. 14 at 4.) Five miles per hour appears to be a significant amount in comparison to the corresponding estimate of total post-impact speed of the plaintiff vehicle (21.5 to 23.5 mph) and the defendant vehicle (17 mph) and whether it is a scientifically acceptable variance or not, it typifies Chewning's analysis which is best described as a patchwork of unreliable estimations blended with what is otherwise accepted science. Succinctly stated, the Court shares the concern as expressed by the court in *Kale v. Douthitt* in which it is observed that: "[e]xperience has shown the futility of attempted demonstration in accident cases; there are too many varying factors." 274

F.2d 476, 483 (4th Cir.1960), *see also, Whittaker v. Van Fossan,* 297 F.2d 245, 246 (4th Cir.1961) ("[e]ven if he [the expert] were competent to render the opinion he ventured, it was not receivable if he failed to take into account every relevant factor.").

The Court is also concerned with Chewning's opinion on the issue of the perception and reaction time of the plaintiff vehicle driver as it exemplifies his analysis of all the issues, including the more important one concerning the estimated pre-impact speed of the defendant vehicle. In essence, Chewning reaches his conclusion that there were but fleeting moments for Mr. Heath to take appropriate measures to avoid impact, e.g., slow down or change lanes and go around the defendant vehicle, by using the starting point or distance between the vehicles of 500 feet when Chewning assumes Heath would have first seen the defendant vehicle in front of him. However, the measure of 500 feet is neither an accurate measure of what the driver actually saw nor is it based on any scientifically accepted variable. Five-hundred feet is simply the statutory minimum distance in which taillights such as those on the defendant vehicle must be able to be seen to meet standards required by law. No one can determine the earliest point when Mr. Heath must have or could have seen the defendant vehicle. In fact, Chewning himself acknowledged in his hearing testimony that Heath's line of vision was unobstructed for at least 1000 feet before the point of impact and he previously acknowledged in deposition that the taillights of the defendant vehicle could have been seen for at least that same distance. (Chewning Dep. at 219, 221, 223–26, attached as Ex. X to Pl.'s Brief in Opp'n to Defs.' Motion *in limine* ).

Granted, testing is not normally available to reproduce an accident scenario and

an expert must therefore apply various accepted principles which can involve, for example, the legitimate technique of extrapolation. Moreover, many objections to proposed expert opinion "go to weight and not admissibility" so that the import, if any, should be determined by the fact finder. *Sparks v. Gilley Trucking Co.*, 992 F.2d 50, 54 (4th Cir.1993) (citing *Bazemore v. Friday*, 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986)) (in a regression analysis, the expert's failure to consider certain variables was a proper question as to the weight of the opinion, not its admissibility). However, in its required role as "gatekeeper", this Court feels obliged "to draw the line" at what it has decided, based on the evidence and arguments presented, to be the point of such unreliability that the expert's opinion is rendered unlikely to assist the fact finder in any meaningful way. In this case, the extent of Chewning's assumptions, combined with his discounting of what the Court understands to be important factors for the proper application of the scientific principles involved and his extrapolation of various values, including the utilization of broad margins of error, result in the conclusion that his proposed testimony is inadmissible under *Daubert.* 509 U.S. at 591, 113 S.Ct. 2786; *see Sparks v. Gilley Trucking Co.*, 992 F.2d at 53 (a court has broad discretion in such matters).

At the very least, the contradictory testimony of the two opposing experts confirms that without the ability to quantify certain variables, their input would not be of assistance to the fact finder and, in fact, would undoubtedly lead to jury confusion which is the very thing to be avoided. The Defendant's motion *in limine* to exclude the proposed testimony of Mr. Chewning in all respects is therefore GRANTED.

## Motion *in limine* to exclude selected Testimony of Plaintiff Life Care Planner

■ The Defendants object to the proposed testimony of the Plaintiff's life care planning expert specifically regarding her proposal, with its related projected cost, for home and yard maintenance as well as homemaker assistance. (Defs.' Mem. In Support of Mot. *in limine* at 36). Simply put, the Defendants argue that such projections lack sufficient foundation and are otherwise too speculative to be admissible. For instance, the Defendants object to testimony regarding life-care activity assistance that would merely be "really good for him." Such arguments may have merit, but on balance they go to the weight, not the admissibility of the proposed evidence. The Defendants' motion is therefore DENIED.

## Motion *in limine* to exclude evidence of post-accident modifications of the defendant truck

■ The Defendants move, pursuant to Fed.R.Evid. 407, to preclude any evidence that additional taillights were added to the rear of the defendant vehicle after the accident as such evidence may support the conclusion by the fact finder that the truck was inadequately illuminated at the time of the collision and that the defendant and/or defendants were thereby negligent. The Court agrees that such proposed evidence will not be admitted under Fed.R.Evid. 407 if it is offered for the purpose of proving "negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for warning or instruction." At the same time, the Court reserves any further ruling, pending the presentation at trial of a proper foundation, of such evidence if it is offered for "another purpose, such as proving ... feasibility of precautionary measures, if controverted ..." or if the door is opened for possible impeachment of any witness. In this latter regard, counsel is admonished not to refer to such possible evidence in opening

statement and to otherwise alert the Court before seeking to introduce any evidence regarding post-accident modifications so that the Court may first determine whether a sufficient foundation exists for its introduction before the jury.

### Motion *in limine* to exclude references to employer-related issues

 The Defendants object to the Plaintiff's intention to offer evidence to prove various negligent acts of commission and omission by Vallejo's employer, C & G Custom Module Hauling, and its individual owners, Cook and Geiselbrecht; such allegations to include: a) negligent hiring; b) negligent retention; c) provision of dangerous equipment; d) lack of training and supervision; and e) failure to warn the public. (Defs.' Mem. in Support of Mot. *in limine* at 38–42; Pl.'s Mot. for J. at 5–7). The defense challenges the admissibility of such evidence on the grounds that none of the allegations, even if established to be true, bear a reasonable relationship to causation and that such assertions, even if true, do not support an independent theory of liability against the employer or individual owners under the circumstances of this case. (Defs.' Mem. In Support of Mot. *in limine* at 38–42). Rather, as the Court agrees, the employer (or any owner) could only be found liable if the defendant driver were found to have been negligent and that such negligence was a proximate cause of the accident. *See generally, Virginia Ry. & Power Co. v. Davidson's Adm'r,* 119 Va. 313, 319, 89 S.E. 229 (1916) (holding that the unfitness of an employee must result in "some specific act of negligence or incompetency before any liability attaches" to the employer). Even then, the individual owners would only be separately liable if their established negligence was sufficiently related to that of the defendant driver which is proven to be a proximate cause.

The only evidence in the record to date that could result in such a conclusion is the Plaintiff's deposition testimony that he saw "something" moving very slowly or stopped and did not see any lights on whatever it was. If the jury would find, for example, that the defendant driver was stopped in his lane of travel or otherwise obstructing traffic without exercising ordinary care under the circumstances in at least activating emergency flashers and that he did not receive adequate training or instruction from his employer (or any of the individual owners) to know to do so, then a cause of action *might be* sustained against one or more of the responsible defendants. *See Todt v. Shaw,* 223 Va. 123, 124, 286 S.E.2d 211, 213 (1982) (the standard of care for a motorist under these conditions is that of ordinary care); *Virginia Ry. & Power Co. v. Davidson's Adm'r,* 119 Va. at 319, 89 S.E.2d at 229 (Defendants' employee must be shown to have been negligent and such negligence must be shown to have been a proximate cause of the accident to impute liability to the employer). Such a scenario is strained to say the least, but possible also given what the Court understands to be the defendant driver's denial during discovery that he had received any relevant training and/or instruction and the individual owners' confirmation of that fact.

The motion *in limine* is therefore DENIED, but only to the extent that the defense will be permitted to offer such evidence as is relevant to the issue of employer and/or owner liability *if* a sufficient foundation can be established at trial. In this regard, the Court will not prohibit Plaintiff's counsel from referring to such anticipated evidence in opening statement as long as he can do so, as usual, in good faith. At the same time, counsel is cautioned that he does so at his own peril if he fails in the related offer of proof and the Court is thereby obliged to grant judg-

ment as a matter of law in favor of the subject defendants before any remaining issues are submitted to the jury. *See Collins v. Craven*, 52 F.R.D. 146, 149 (D.S.C.1971)(citing *Haldeman v. Bell Telephone Co. of Pennsylvania*, 387 F.2d 557, 559 (3d Cir.1967) for the proposition that "where there is mere possibility of negligence and where the probabilities of negligence or no negligence under the evidence are at best evenly balanced, there is no warrant for submission to a jury and direction of verdict is proper in such instances.").

### Motion *in limine* to exclude any reference to prior DWI conviction of defendant driver

■ The Defendants move to exclude any reference to a 1990 conviction of the defendant driver for driving under the influence of, presumably, alcohol. No additional information concerning the conviction is known and although the defendant driver denied the fact of the conviction in deposition, the Court finds, pursuant to Fed.R.Evid. 403, that any possible "probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, or misleading [of] the jury...." The Court is especially concerned with such a consequence given the fact that there is absolutely no evidence that the defendant driver was impaired in any respect at the time of the accident, aside from the vintage of the prior conviction. Although the conviction might be admissible to impeach if Mr. Vallejo continued to deny its existence at trial (which is doubtful), its introduction for even such a limited purpose (and even with appropriate cautionary instruction) has the potential for at least suggesting alcohol impairment in the subject incident where there is no evidence of same. The defendant's motion is therefore GRANTED.

### Motion *in limine* to exclude any evidence concerning the presence of "patchy fog"

■ The Defendants move to exclude, based on the existing discovery record, any evidence to the effect that there was "patchy fog" in the vicinity of the accident, especially if it is for the purpose of applying a higher standard of care on the part of the defendant driver than ordinary care, namely, "extreme caution." Plaintiff's counsel responds to the effect that he will not seek to offer such evidence for such a purpose, but that he seeks leave of court to offer the evidence in the context of general road conditions as such evidence may be relevant to the jury's determination of whether each driver's actions were reasonable under the circumstances.

The Court grants the motion *in limine* to the extent that such evidence which is presently on the discovery record is not sufficient or admissible to establish any higher standard of care. However, the Plaintiff will be permitted the opportunity at trial to establish a sufficient foundation for the fact finder to at least reasonably infer that such weather conditions may have affected a driver's actions in exercising ordinary care under the circumstances. At the same time, counsel are advised that the only relevance of such evidence would presumably be to establish negligence on the part of the defendant driver, not the plaintiff driver since, ultimately, the issue in this case is not whether the plaintiff driver (Heath) was negligent, but whether the defendant driver (Vallejo) was also negligent to the extent that it constituted a proximate cause of the accident. The Court also notes that the defendant driver admits that he was at least in the process of slowing down at the time of impact which a jury could reasonably conclude is the same type of reaction one would have to encountering "patchy fog." It is therefore questionable what relevance any additional evidence of such a weather condition would have without, at the same time, its slight probative impact being outweighed by the danger of a confusion of issues and

a misleading of the jury. Fed.R.Evid. 403. The defendant's motion *in limine* is therefore GRANTED, but with leave granted to the Plaintiff to offer any *additional* evidence involving weather conditions as it may be of sufficient probative value in establishing negligence on the part of the defendant driver.

**Motion to exclude reference by plaintiff to having seen "something" immediately before impact**

 The Defendants move to exclude the anticipated testimony of the Plaintiff that, at the last possible moment, he saw "something" moving very slowly or stopped in front of the plaintiff vehicle. The Defendants argue that such proposed evidence is entirely speculative and otherwise lacks a proper foundation to be admitted as a lay opinion as to speed under Fed.R.Evid. 701. The basis of the allegation that such evidence would be speculative is premised on what appears to be the prior inconsistent statements of the Plaintiff as to what he saw and/or heard immediately before impact. Specifically, he stated in initial interview, albeit fourteen months after the accident, that he did not see anything before impact, but only heard the ensuing "caboom." However, in subsequent deposition, he asserted that he did remember more and it is anticipated, based on counsel's proffer, that a possible explanation for the apparent inconsistency is the initial memory loss caused by the Plaintiff's extensive injuries resulting from the accident.

The Defendants offer no case authority to assist the Court in deciding whether the proposed testimony of the plaintiff should be excluded as "speculative." On the contrary, the court in *Mattison v. Dallas Carrier Corp.,* 947 F.2d 95, 110 (4th Cir.1991), held that to be admissible under Fed. R.Evid. 701, the proposed testimony need only be based on an observation that the witness made that serves to explain the witness' testimony or is otherwise probative of a fact in issue. The anticipated testimony of the Plaintiff, subject to what the Court is assured will be vigorous cross examination as to prior statements, is clearly based on what the witness claims he personally observed as a product of his senses. Such evidence is probative of a fact in issue, namely, whether the object he allegedly saw was the defendant vehicle and whether under all the circumstances it was obstructing traffic to the extent that it constituted negligence that was a proximate cause of the accident.

Moreover, the case law cited by the Defendants for the proposition that lay opinion evidence must be excluded if the witness did not have a "reasonable opportunity to form an opinion" is distinguishable. First, in *Doe v. Dewhirst,* cited by the Defendants, a child witness described an exact speed range of 35 to 45 miles per hour of a vehicle at the moment of impact and immediately afterward as the vehicle left the scene while the witness was simultaneously attempting to assist the young victim who had just been struck by the same vehicle. 240 Va. 266, 270, 396 S.E.2d 840, 843 (1990). The situation appears to be factually distinguishable from this case because of the lack of a sufficient foundation to estimate speed, aside from the fact that the court in *Doe* does not prescribe a strict rule as to how long an opportunity or at what distance a witness must have been able to see in order to pass the threshold of admissibility. Similarly, in *Meade v. Meade,* the court found it was improper to admit the testimony of a minor witness who did not observe anything directly because he was lying on the back seat of a car and testified that in his opinion the defendant vehicle was traveling at a high rate of speed (80 miles an hour) based on the sound of the car alone. 206 Va. 823, 147 S.E.2d 171 (1966). The Virginia Supreme Court held that the fourteen year-old witness, who neither observed nor, as a

non-driver, had the ability to estimate speed of a vehicle by its sound, did not have the capacity to offer his lay opinion as to the speed of a passing vehicle. *Id.* at 826, 147 S.E.2d 171.

Such factual distinctions are sufficient for this Court to conclude that though instructive, such case precedent is not applicable in this case, and that the Plaintiff shall be entitled to present his testimony to the fact finder who will be permitted to decide whether he saw anything, whether it was the defendant vehicle, and, if so, whether it was obstructing traffic under the circumstances so as to constitute a proximate cause of the accident. *See Thomas v. Settle,* 247 Va. 15, 439 S.E.2d 360 (1994).

The defendant's motion *in limine* is therefore DENIED.

**Motion *in limine* to exclude evidence of medical expenses not incurred by plaintiff**

■■ The Defendants move to exclude evidence of damages involving healthcare provider charges that do not reflect any so-called "write-offs," i.e., discounts that were granted by third party insurance carriers to reduce the amount of actual medical and related expenses incurred, thereby reducing payments that would normally be a plaintiff liability. The issue is one that has been repeatedly litigated throughout the Commonwealth of Virginia of late, both in the state and federal system. To date, the Virginia Supreme Court has held in a case involving medical payment provisions of a policy that such write-offs must be taken into account in order to determine the actual expenses incurred. *State Farm Mut. Auto. Ins. v. Bowers,* 255 Va. 581, 500

S.E.2d 212 (1998). As well, every federal court in this circuit that has considered the matter has ruled consistently in reaching the same conclusion that any amount that was written off and not incurred may *not* be considered as part of a damage claim. *See, e.g., Mitchell v. Hayes,* 72 F.Supp.2d 635 (W.D.Va.1999); *McAmis v. Wallace,* 980 F.Supp. 181, 184 (W.D.Va.1997) (holding that under Virginia's collateral source rule, the plaintiff was not entitled to recover amounts written off by Medicaid, the rule being intended to "prevent tortfeasors from avoiding their duty to compensate ... victims who have the foresight to insure themselves ...") (citing *Schickling v. Aspinall,* 235 Va. 472, 369 S.E.2d 172, 174 (1988)); *Babb v. Wal–Mart Stores, Inc.,* No. 2: 95CV630 (E.D.Va. Mar. 7, 1996). This Court will not hold otherwise; not just because of what it deems to be binding precedent from the federal level, but also because it finds such authority to be more persuasive.[7]

Simply put, the issue to the Court is not whether the victim or the responsible defendant should benefit from any "windfall" that may occur from the practice of write-offs, but whether either party should benefit where there is clearly a distinction between the purpose of the traditional collateral source rule with regard to insurance coverage generally as it may benefit the victim (and *should not* act as a windfall to the defendant where the rule is intended to prevent a tortfeasor from avoiding an obligation to compensate just because the victim has insurance) and the situation involving write-offs in which the expenses are never incurred as the result of contractual arrangements between two third parties such as the hospital and the carrier.[8]

---

**7.** The case precedent of *Rayfield v. Lawrence,* 253 F.2d 209 (4th Cir.1958), cited by the Plaintiff and from this same court, is not in opposition because it merely holds that the Virginia collateral source rule applies to gov-

ernmental insurance relationships as well as private coverage scenarios.

**8.** Furthermore, the practice of write-offs applies to all insureds as opposed to being determined on a case-by-case basis.

The Court does not believe the Virginia collateral source rule was ever intended to reach so far.

The whole issue is further compounded by the fact that its real significance is the impact of such additional medical expenses on establishing the base amount of the special damages as that combined amount may form a basis to demand and receive additional compensation for more intangible injuries such as pain and suffering. Such relevancy, i.e., the amount of "specials" as that somehow is deemed an accurate measure of intangible injury, is questionable to begin with and it is at least illogical to add to that threshold fallibility. Obviously, the issue deserves more discussion than is either necessary or appropriate in this case, but it will have to await another day from at least this Court by which time the Virginia Supreme Court may have had the opportunity to effectively put the matter to rest.

The Defendants' motion is therefore GRANTED and only that evidence of expenses that result in a reduction by the amount of any write-offs will be admitted into evidence for the jury's consideration.

An appropriate Order shall issue.