848 So.2d 406 (2003)
Albert GOBLE, Appellant/Cross-Appellee,
v.
Mark E. FROHMAN, Appellee/Cross-Appellant.
No. 2D02-1887.
District Court of Appeal of Florida, Second District.
June 25, 2003.
*407 Amy S. Farrior, Raymond T. Elligett, Jr., and Charles P. Schropp of Schropp, Buell & Elligett, P.A., Tampa; and Timothy F. Prugh of Prugh, Holliday & Deem, P.L., Tampa, for Appellant/Cross-Appellee.
Rebecca O'Dell Townsend and Daniel P. Mitchell of Gray, Harris & Robinson, P.A., Tampa, for Appellee/Cross-Appellant.
Jeremy S. Sloane of Rice Rose & Snell, Daytona Beach, for Amicus Curiae Florida Defense Lawyers' Association.
STRINGER, Judge.
Albert Goble, plaintiff below, appeals the trial court's order granting a setoff in favor of Mark E. Frohman, defendant below. The trial court reduced the jury verdict for past medical expenses to the amount Goble's medical providers had agreed to accept under their contract with Goble's health maintenance organization (HMO). We conclude that the setoff was proper and affirm. Because this decision will impact the billing practices of HMOs and medical providers, we also certify a question of great public importance to the Florida Supreme Court. On cross-appeal, Frohman argues that the trial court erred in excluding collateral source evidence. We affirm on cross-appeal as well.
While Goble was riding a motorcycle, he was hit by Frohman's vehicle and severely injured in the accident. Goble subscribed to Aetna U.S. Healthcare, an HMO. Goble's medical providers billed $574,554.31 for his medical treatment relating to this accident, and the jury awarded this amount as past medical expenses. Pursuant to fee schedules in contracts between *408 Aetna and the medical providers, Aetna paid $145,970.76 for the medical treatment and Goble paid $15,000 in co-payments. The difference between the amounts billed and the amounts paid, or $413,583.55 (referred to hereafter as "the contractual discount"), was written off by the medical providers, who have no right to seek reimbursement from Goble or any third parties.[1]See § 641.315(3), Fla. Stat. (1999).
Posttrial, the court granted Frohman's motion for setoff under section 768.76, Florida Statutes (1999). In pertinent part, this statute provides:
768.76 Collateral sources of indemnity.
(1) In any action to which this part applies in which liability is admitted or is determined by the trier of fact and in which damages are awarded to compensate the claimant for losses sustained, the court shall reduce the amount of such award by the total of all amounts which have been paid for the benefit of the claimant, or which are otherwise available to the claimant, from all collateral sources; however, there shall be no reduction for collateral sources for which a subrogation or reimbursement right exists....
(2) For purposes of this section:
(a) "Collateral sources" means any payments made to the claimant, or made on the claimant's behalf, by or pursuant to:
. . . .
3. Any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the costs of hospital, medical, dental, or other health care services.
Under the common-law rule, both the introduction of evidence of collateral benefits and the setoff of any collateral source benefits were prohibited. Sheffield v. Superior Ins. Co., 800 So.2d 197, 200 n. 3 (Fla.2001). The common-law rule has been altered in this state by section 768.76. Id. The Florida Supreme Court has held that section 768.76 must be narrowly construed as an alteration of the common law. Allstate Ins. Co. v. Rudnick, 761 So.2d 289, 293 (Fla.2000). While we recognize we are bound by this precedent, we suggest that section 768.76 should be liberally construed because the statute is also remedial in nature. See Irven v. Dep't of Health & Rehabilitative Servs., 790 So.2d 403, 406 (Fla.2001) (holding that statutes that are both alterations of the common law and remedial in nature should be liberally construed to give effect to the legislature's express intent).
Section 768.76 was enacted in 1986 as part of the Tort Reform and Insurance Act. Ch. 86-160, §§ 1, 55, Laws of Fla. The legislature has offered the following explanation of the Act's underlying policy considerations:
The Legislature finds and declares that a solution to the current crisis in liability insurance has created an overpowering public necessity for a comprehensive combination of reforms to both the tort system and the insurance regulatory system. This act is a remedial measure and is intended to cure the current crisis and to prevent the recurrence of such a crisis. It is the purpose of this act to ensure the widest possible availability of liability insurance at reasonable rates, to ensure a stable market for liability insurers, to ensure that injured persons recover reasonable damages and to encourage *409 the settlement of civil actions prior to trial.
Ch. 86-160, § 2 (emphasis added). Thus, while section 768.76 constitutes an alteration of the common law, it is clearly remedial in nature, and it should be liberally construed to give effect to the legislature's express intent.
We question the supreme court's reliance on Rollins v. Pizzarelli, 761 So.2d 294, 300 (Fla.2000), to apply a narrow construction of section 768.76 in Rudnick. See 761 So.2d at 293. Rollins involved the construction of section 627.736(3), Florida Statutes (Supp.1996), which precluded the recovery of damages "for which personal injury protection benefits are paid or payable" from collateral sources and required the jury to be so instructed. The Rollins court did not construe section 768.76. Because it does not appear that section 627.736(3) is also remedial in nature, it was proper to narrowly construe that section. However, the remedial nature of section 768.76 requires a liberal construction under Irven.
Regardless, even a narrow construction of section 768.76 requires a holding that the trial court properly set off the contractual discount. In section 768.76, the legislature defined a certain category of collateral source benefits that are subject to setoff. The statute defines the collateral sources subject to setoff as "payments made to the claimant, or made on the claimant's behalf." § 768.76(2)(a). The issue for our determination is whether the contractual discount constitutes a "payment made" on Goble's behalf pursuant to his health insurance.
"Payment" is defined by Webster's as "the act of paying or giving compensation," "the discharge of a debt or an obligation," "something given to discharge a debt or obligation or to fulfill a promise." Webster's Third New International Dictionary 1659 (1986). It has also been defined as "[p]erformance of an obligation, usu. by the delivery of money. Performance may occur by delivery and acceptance of things other than money, but there is a payment only if money or other valuable things are given and accepted in partial or full discharge of an obligation." Black's Law Dictionary 1150 (7th ed.1999).
Thus, it is clear that a payment is more than the act of remitting money. In this case, the contractual discount constitutes a "payment made" on Goble's behalf because remittance of the discounted amount discharged Goble's obligation to his medical providers for treatment. As we have already noted, the medical providers are prohibited from seeking reimbursement from Goble or any third parties for the contractual discount.
D'Angelo v. Fitzmaurice, 832 So.2d 135 (Fla. 2d DCA 2002), review granted, (Fla. May 15, 2003), as relied upon by Goble, is inapposite. In that case, prior to trial, the plaintiff settled with a defendant hospital for the forgiveness of an outstanding hospital bill and cash. Id. at 136. The court rejected the defendant's request for a setoff of the settlement amounts under section 768.76.[2]Id. at 136 n. 2. Goble argues that the forgiveness of a hospital bill is analogous to the contractual discount in this case. However, under section 768.76(2)(a), a settlement agreement with a codefendant hospital is not a "collateral source" of indemnity. Thus, section 768.76 would not apply in D'Angelo.
*410 The allowance of a setoff for a contractual discount is also consistent with the legislature's express intent to fully compensate the injured party while simultaneously reducing the litigation costs that arise when insurers are required to pay damages beyond what the injured party actually incurred. See ch. 86-160, § 2. The injured party is fully compensated by an award that equals the amounts the injured party paid to the medical provider plus the amounts paid by his insurer, which will ultimately be subrogated by the insurer. See §§ 641.31(8), 768.76(4), Fla. Stat. (1999). Awarding an injured party damages that include a contractual discount, which in this case is in excess of $400,000, results in a windfall to the injured party for damages that have not been incurred. The allowance of such a windfall completely undermines the purpose of the Act by requiring insurers to pay damages based on a billing fiction, especially when the insurers will be sure to pass the cost for these phantom damages on to Floridians. Accordingly, we affirm the trial court's order granting a setoff in favor of Frohman.
On cross-appeal, Frohman argues that the trial court erred in excluding evidence of the contractual discounts. "The collateral source rule functions as both a rule of damages and a rule of evidence." Gormley v. GTE Prods. Corp., 587 So.2d 455, 457 (Fla.1991). The evidentiary rule prohibits the admission of evidence regarding collateral sources in the liability trial because it "misleads the jury on the issue of liability." Id. at 458. To challenge the reasonableness or necessity of the medical bills, Frohman could have introduced evidence on the value of or need for the medical treatment. As stated in Gormley, "there generally will be other evidence having more probative value and involving less likelihood of prejudice than the victim's receipt of insurancetype benefits." Id. (quoting Williams v. Pincombe, 309 So.2d 10, 11 (Fla. 4th DCA 1975)). Furthermore, as this court has previously held, evidence of contractual discounts received by managed care providers is insufficient, standing alone, to prove that nondiscounted medical bills were unreasonable. Hillsborough County Hosp. Auth. v. Fernandez, 664 So.2d 1071 (Fla. 2d DCA 1995). Therefore, we affirm the exclusion of evidence at trial regarding collateral source benefits.
Because this case presents an issue of great public importance, we certify to the Florida Supreme Court the following question:
UNDER SECTION 768.76, FLORIDA STATUTES (1999), IS IT APPROPRIATE TO SETOFF AGAINST THE DAMAGES PORTION OF AN AWARD THE AMOUNTS OF REASONABLE AND NECESSARY MEDICAL BILLS THAT WERE WRITTEN OFF BY MEDICAL PROVIDERS PURSUANT TO THEIR CONTRACTS WITH A HEALTH MAINTENANCE ORGANIZATION?
Affirmed; question certified.
NORTHCUTT, J., and THREADGILL, EDWARD F., SENIOR JUDGE, Concur.
NOTES
[1] Aetna, however, has a subrogation or reimbursement right for the amounts paid on Goble's behalf minus a pro rata share of Goble's costs and attorney's fees. See §§ 641.31(8), 768.76(4), Fla. Stat. (1999).
[2] Although section 768.76 is not cited in the opinion, it was cited in briefs the appellant filed with this court.