901 So.2d 830 (2005)
Albert GOBLE, Petitioner,
v.
Mark E. FROHMAN, Respondent.
No. SC03-1245.
Supreme Court of Florida.
April 28, 2005.
*831 Charles P. Schropp, Amy S. Farrior and Raymond T. Elligett, Jr. of Schropp, Buell and Elligett, P.A., Tampa, FL and Theodore E. Karatinos and Timothy F. Prugh of Prugh, Holliday, Deem and Karatinos, P.L., Tampa, FL, for Petitioner.
Daniel P. Mitchell of Gray, Harris and Robinson, P.A., Tampa, FL, for Respondent.
Roy D. Wasson of Wasson and Associates, Miami, FL on behalf of the Academy of Florida Trial Lawyers; Warren B. Kwavnick of Cooney, Mattson, Lance, Blackburn, Richards and O'Conner, P.A., Fort Lauderdale, Florida, Jeremy S. Sloane of Rice, Rose and Snell, Daytona Beach, FL, and Tracy Raffles Gunn, Tampa, FL of Fowler, White, Boggs and Banker, P.A., on behalf of the Florida Defense Lawyers' Association and Charles W. Hall of Fowler, White, Boggs, and Banker, P.A., St. Petersburg, FL on behalf of the Allstate Insurance Company, for Amici Curiae.
PER CURIAM.
We have for review Goble v. Frohman, 848 So.2d 406 (Fla. 2d DCA 2003), in which the Second District Court of Appeal certified the following question as one of great public importance:
UNDER SECTION 768.76, FLORIDA STATUTES (1999), IS IT APPROPRIATE TO SETOFF AGAINST THE DAMAGES PORTION OF AN AWARD THE AMOUNTS OF REASONABLE AND NECESSARY MEDICAL BILLS THAT WERE WRITTEN OFF BY MEDICAL PROVIDERS PURSUANT TO THEIR CONTRACTS WITH A HEALTH MAINTENANCE ORGANIZATION?
Id. at 410. We have jurisdiction under article V, section 3(b)(4) of the Florida Constitution. For the reasons stated below, we answer the certified question in the affirmative. We approve the district court's decision affirming the trial court's setoff under section 768.76 of contractual discounts negotiated by the plaintiff's HMO and written off by the plaintiff's medical providers.

BACKGROUND
Albert Goble was severely injured when Mark Frohman's vehicle hit Goble's motorcycle. Goble's injuries required extensive medical treatment, for which Goble's medical providers billed him $574,554.31. However, Goble was a member of Aetna U.S. Healthcare, an HMO. Pursuant to the preexisting fee schedules in contracts between Aetna and the medical providers, Aetna paid and the medical providers accepted just $145,970.76 for the medical services rendered to Goble.
Under the medical providers' contracts with Aetna, the providers have no right to *832 seek reimbursement from Goble or from any third party for the contractual "discount" of over $400,000, the difference between the amounts billed and the amounts paid. Aetna has a right of subrogation; however, Aetna's subrogation right is limited to the sum of $145,970.76 that Aetna paid under the contracts.
Goble sued Frohman, and the jury awarded Goble $574,554.31 for past medical expenses, reflecting the amount Goble's medical providers had billed. Frohman filed a posttrial motion to reduce this award by the amount of the contractual discounts. The trial court granted Frohman's motion for setoff under section 768.76, Florida Statutes (1999).
On appeal, the Second District Court of Appeal affirmed the trial court's order of setoff. Goble v. Frohman, 848 So.2d 406, 410 (Fla. 2d DCA 2003). The district court held that contractual discounts off medical bills are "collateral sources" subject to setoff under section 768.76. The district court reasoned that "collateral sources" are defined by the statute as "payments made" on the claimant's behalf, and that the dictionary definition of "payment" is not limited to the actual remitting of cash but includes any act that discharges a debt or obligation. Goble, 848 So.2d at 409. In this case, the contractual discounts discharged Goble's obligation to his medical providers; therefore, the discounts are "payments made" on Goble's behalf and so are "collateral sources" under section 768.76. Id. The district court also reasoned that permitting a setoff for contractual discounts is consistent with the Legislature's intent to reduce "the litigation costs that arise when insurers are required to pay damages beyond what the injured party actually incurred." Id. at 410. The alternative, forcing an insurer to pay for damages that have not been incurred, would result in a windfall to the injured party. Id. The allowance of a windfall would undermine the legislative purpose of controlling liability insurance rates because "insurers will be sure to pass the cost for these phantom damages on to Floridians." Id.

DISCUSSION
We agree with the conclusion reached by the Second District Court of Appeal. Section 768.76 provides in relevant part:
(1) In any action to which this part applies in which liability is admitted or is determined by the trier of fact and in which damages are awarded to compensate the claimant for losses sustained, the court shall reduce the amount of such award by the total of all amounts which have been paid for the benefit of the claimant, or which are otherwise available to the claimant, from all collateral sources; however, there shall be no reduction for collateral sources for which a subrogation or reimbursement right exists....
(2) For purposes of this section:
(a) "Collateral sources" means any payments made to the claimant, or made on the claimant's behalf, by or pursuant to:
....
3. Any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the costs of hospital, medical, dental, or other health care services.
§ 768.76, Fla. Stat. (1999).
Our guiding purpose in construing this statute is to give effect to the Legislature's intent. State v. J.M., 824 So.2d 105, 109 (Fla.2002). In attempting to discern legislative intent, we first look to the language used in the statute. Joshua v. City of Gainesville, 768 So.2d 432, 435 (Fla.2000). If the statutory language *833 is unclear, we apply rules of statutory construction to determine legislative intent. Id. If a statutory term is not defined, its plain and ordinary meaning generally can be ascertained by reference to a dictionary. Seagrave v. State, 802 So.2d 281, 286 (Fla.2001).
We conclude, as the Second District did, that the contractual discounts fit within the statutory definition of collateral sources. Section 768.76 defines collateral sources as "payments made" on a claimant's behalf. Virtually all dictionaries include, among the first three definitions of "payment" or "pay," the concept of discharge of a debt. See, e.g., Merriam-Webster's Collegiate Dictionary 851 (10th ed.1993) ("to discharge a debt or obligation"); Webster's Third New Int'l Dictionary 1659 (1981) ("discharge of a debt or obligation"). In this case, the discounts negotiated by Goble's HMO fully discharged Goble's obligation to his medical providers. Because of the medical providers' contracts with Goble's HMO, Goble was obligated to pay the claimants $145,970.76, rather than the billed charges of $574,554.31. In this light, the discounts negotiated by Goble's HMO are as much a benefit to Goble as the HMO's remittance of $145,970.76 to satisfy the remaining charges on Goble's medical bills. The contractual discounts, therefore, constitute "amounts which have been paid for the benefit of the claimant, or which are otherwise available to the claimant, from [a] collateral source[]." Therefore, under section 768.76, the amount of the contractual discount, for which no right of reimbursement or subrogation exists, is an amount that should be set off against an award of compensatory damages.

CONCLUSION
We agree with the conclusion reached by the Second District Court of Appeal that contractual discounts negotiated by an HMO fall within the statutory definition of collateral sources subject to setoff. The trial court, therefore, properly applied section 768.76 to reduce Goble's damages by the amount of the discounts. We answer the certified question in the affirmative and approve the decision of the Second District Court of Appeal.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, QUINCE, and CANTERO, JJ., concur.
BELL, J., specially concurs with an opinion, in which WELLS and CANTERO, JJ., concur.
LEWIS, J., concurs in result only with an opinion.
BELL, J., specially concurring.
I agree with the majority's reasoning and conclusion. The contractual discounts negotiated by Goble's HMO fall under the statutory definition of "collateral sources" that are to be set off against an award of compensatory damages under section 768.76. There is, however, another reason why Goble is not entitled to recover, as compensatory damages, the full (prediscount) amount of his medical bills; and it lies wholly outside the question of "collateral sources" either as defined by statute or at common law. The reason is simple: Goble has not paid, nor is he obligated to pay, the prediscount amount of his medical bills. And, absent any evidence that the discount was intended as a gift, Goble can recover no more than the amount he paid or is obligated to pay.
Under common-law principles of compensatory damages, Goble can recover only the discounted portion of his medical billsthe only portion that he actually was obligated to pay. The amount of the full (prediscount) bill that was written off pursuant to the contractual agreement between *834 Goble's HMO and Goble's medical-services provider was an amount that Goble never was obligated to pay. This amount, therefore, does not represent Goble's actual damages. To allow for the recovery of this full amount, under the guise of "compensatory damages," would allow for the recovery of what the district court aptly described as "phantom damages." Goble v. Frohman, 848 So.2d 406, 410 (Fla. 2d DCA 2003).
It has long been established as a fundamental principle of Florida law that the measure of compensatory damages in a tort case is limited to the actual damages sustained by the aggrieved party. Hanna v. Martin, 49 So.2d 585, 587 (Fla.1950). The Fourth District Court of Appeal recently applied this principle in Thyssenkrupp Elevator Corp. v. Lasky, 868 So.2d 547 (Fla. 4th DCA 2003) (on motion for rehearing). In Thyssenkrupp, the plaintiff's medical providers had reduced the amounts of the plaintiff's medical bills as required by the providers' participation in the Medicare program. The Fourth District held that the defendant was entitled to have the plaintiff's award for medical expenses reduced by the amount of the Medicare write-offs, reasoning that "a plaintiff has suffered no damage from the higher charge by the provider when it later accepts Medicare payment in full satisfaction of the charge." 868 So.2d at 551. The district court noted that when a provider accepts a contractual fee in full satisfaction of a bill, "the original charge becomes irrelevant because it does not tend to prove that the claimant suffered any loss by reason of the charge." Id. Similarly, in Cooperative Leasing, Inc. v. Johnson, 872 So.2d 956 (Fla. 2d DCA 2004), the Second District limited the plaintiff's award for past medical expenses to the amounts paid by Medicare because the plaintiff was never liable for the billed amounts that were written off by her medical-services providers pursuant to their Medicare agreements.[1]
The courts of several other states have applied common-law principles to conclude that a plaintiff's damages for medical expenses are limited to the amount actually incurred by the plaintiff. For example, in Hanif v. Housing Authority, 200 Cal. App.3d 635, 246 Cal.Rptr. 192 (1988), a California appeals court limited the plaintiff's damages to the amount paid by Medicaid. The Hanif plaintiff sued for $31,618 in medical expenses, even though the medical providers had accepted $19,317 from Medicaid and written off the balance. Id. at 197. Like Florida, California measures a defendant's liability by the "reasonable value" of medical care and services attributable to the tort. Id. at 194-95. Hanif reasoned that the term "reasonable value" is one of limitation, not aggrandizement. Id. at 195. Thus, where a fixed sum has been incurred for medical expenses, that sum is the most the plaintiff may recover even if it is less than the prevailing market rate. Id.
Similarly, in Bates v. Hogg, 22 Kan. App.2d 702, 921 P.2d 249 (1996), the Kansas Court of Appeals limited a plaintiff's damages to the amounts paid by Medicaid. The issue in Bates was whether a plaintiff could present evidence of the market value of medical treatment, even though her providers had accepted the lower Medicaid fees as full payment. Id. at 249. At trial, the court limited the evidence to the *835 amount actually paid. The appellate court affirmed, holding that since the provider, by contract, agreed not to charge Medicaid patients for the difference between their customary charge and the amount paid, the Medicaid fee represented the customary charge under the circumstances. Id. at 253.[2]
Finally, this view has been adopted by the American Law Institute as stated in the Restatement (Second) of Torts:
When the plaintiff seeks to recover for expenditures made or liability incurred to third persons for services rendered, normally the amount recovered is the reasonable value of the services rather than the amount paid or charged. If, however, the injured person paid less than the exchange rate, he can recover no more than the amount paid, except when the low rate was intended as a gift to him.
Restatement (Second) of Torts § 911 cmt. h (1979).
In this case, it is undisputed that Goble was never obligated to pay or otherwise liable for the "discounts" of over $400,000 that he seeks to recover from the defendant. Goble was liable only for the sum of $145,970.76. This amount reflects the fees for the medical services rendered to Goble, charged at the rates prenegotiated between Goble's HMO and his healthcare providers. Managed-care plans routinely negotiate discounted fees with medical providers. In these cases, it makes little sense to allow a plaintiff to recover damages based on the providers' billed amounts when those billed amounts tell us nothing about the actual costs incurred by the plaintiff. Instead, the common-law rule of Hanna should apply. Here, Hanna would limit Goble's recovery for medical expenses to the amount of medical expenses that he actually was obligated to pay.
WELLS and CANTERO, JJ., concur.
LEWIS, J., concurring in result only.
Although I concur in the result, I write separately to address the incorrect conclusion espoused by the specially concurring opinion that under common-law principles of compensatory damages an injured party is allowed to recover only the portion of medical bills he or she has actually paid. See specially concurring op. at 833-34. Contrary to such assertion, at common law a wrongdoer was responsible for the total damages caused to an injured party, which would include the reasonable value of any medical services rendered, regardless of whether the injured party actually paid for or received payment for some of the damages from collateral sources. See Urbanak v. Hinde, 497 So.2d 276, 277 (Fla. 3d DCA 1986) ("At common law, a wrongdoer was liable for the total damages caused an injured party, regardless of whether the injured party received payment for some of the damages from collateral sources."); Janes v. Baptist Hosp., 349 So.2d 672, 673 (Fla. 3d DCA 1977) ("Florida follows the collateral source rule which stands for the proposition that total or partial compensation received by the injured party from a collateral source wholly independent of the wrongdoer will not operate to lessen the damages recoverable from the person causing the injury."); Paradis v. Thomas, *836 150 So.2d 457, 458 (Fla. 2d DCA 1963) (holding that the fact that the plaintiff received free hospital services because he was in the armed service at the time of the accident would not prevent him from recovering the value of the hospital services). Contrary to the statements in the special concurrence, a tortfeasor under the common law could not avail himself of payments from collateral sources such as "insurance policies owned by the plaintiff or third parties, employment benefits, or social legislation benefits." Robert E. Owen & Assocs., Inc. v. Gyongyosi, 433 So.2d 1023, 1025 (Fla. 4th DCA 1983). Cases involving Medicare or Medicaid address totally different statutory circumstances. In Paradis, the court quoted with approval from the basic common law principles that partial or even total benefits received from a source independent of the wrongdoer do not operate to reduce the common law damages recoverable from the person causing the injury. See 150 So.2d at 458. In a thoughtful, well-researched, well-reasoned and well-articulated opinion, the Paradis court even recognized the collection of such legal authority in an annotation which it characterized as a "nearly overwhelming modern authority." Id. The reasonable value of even gratuitous services have been recoverable under common law concepts.
Section 768.76 of the Florida Statutes abrogated the common law collateral source rule and replaced it with a statutory provision that allows certain payments from collateral sources to be set off from a plaintiff's recovery. See § 768.76(1), Fla. Stat. (1999); see also Coop. Leasing, Inc. v. Johnson, 872 So.2d 956, 959 (Fla. 2d DCA 2004). Therefore, today an injured party pursuant to section 768.76 of the Florida Statutes may recover only that portion of his medical bills that he is actually obligated to pay. This limitation is purely a statutory construct, and clearly has no origin in the common law principles of compensatory damages applied in this state. Recent Medicare and Medicaid concepts are purely statutory programs which have impacted and artificially established the reasonable charges for which recovery may be made. Cases which have considered these statutory provisions apply legislative alterations upon fundamental common law principles, not the underlying common law principles.
In my view, the Hanna v. Martin, 49 So.2d 585 (Fla.1950), decision does not represent common law precedent for establishing recoverable damages in connection with injuries to persons. See specially concurring op. at 834. Hanna did not consider or address personal injuries but involved a violation of an injunction in a submerged lands case and addressed whether "the costs of constructing a bulkhead were an improper element of damages chargeable to the plaintiffs under Section 271.01 and 309.01, F.S.A." Id. at 587. The Court decided Hanna under an injunctive and statutory scheme with regard to real property not under Florida common law. See id. 587-88 ("Chapters 271 and 309, F.S.A., cannot be construed as authority for awarding a judgment against the appellants-defendants in the sum of $13,020.00 as damages for the costs of constructing a bulkhead referred to in the pleading.... It is our conclusion that the costs of the construction of a bulkhead... was an improper element of damages."). Therefore, I suggest that the decision in Hanna cannot be the yardstick for measuring the common law with regard to the present case. Moreover, the majority of the cases relied on to advance the argument that it "has long been established as a fundamental principle of Florida law that the measure of compensatory damages in a tort case is limited to the actual damages sustained by the aggrieved party," specially concurring op. at 834, involve statutory schemes, such as Medicare and Medicaid, not the common law. See *837 Coop. Leasing, Inc., 872 So.2d at 960 ("[W]e hold that the appropriate measure of compensatory damages for past medical expenses when a plaintiff has received Medicare benefits does not include the difference between the amount that the Medicare providers agreed to accept and the total amount of the plaintiff's medical bills."); Thyssenkrupp Elevator Corp. v. Lasky, 868 So.2d 547, 548 (Fla. 4th DCA 2003) ("The issues on appeal relate to ... the propriety of entering judgment for past medical expenses that include charges eliminated by Medicare payment."); see also Hanif v. Housing Auth., 200 Cal. App.3d 635, 246 Cal.Rptr. 192, 197 (1988); Bates v. Hogg, 22 Kan.App.2d 702, 921 P.2d 249, 252-53 (1996); Boutte v. Kelly, 863 So.2d 530, 553 (La.Ct.App.2003); Moorhead v. Crozer Chester Med. Ctr., 564 Pa. 156, 765 A.2d 786, 790-91 (2001). These statutory Medicare and Medicaid cases are not based on the common law and are premised on the limitations imposed on charges by statutory provisions. In my view, Hanna cannot be the basis for creating the "common law rule" in Florida when the result reached in that case turned exclusively on our construction and application of statutorily based real property rights and damages for a violation of an injunction entered pursuant to that statutory scheme.
NOTES
[1] See also Hollins v. Perry, 582 So.2d 786, 786-87 (Fla. 5th DCA 1991) (Diamantis, J., concurring specially) ("Florida has followed the rule that damages awarded to a plaintiff should be equal to and precisely commensurate with the loss sustained. Appellee's loss for past hospitalization expenses was the sum of $35,000 [which plaintiff's medical-services provider agreed to accept as full payment for plaintiff's past hospitalization expenses] and not the original greater sum.") (citing Hanna, 49 So.2d at 587).
[2] See also Boutte v. Kelly, 863 So.2d 530 (La. Ct.App.2003) (holding that adjustments to medical bills as required by Medicare cannot be claimed by a plaintiff as damages because the plaintiff was never liable for the adjusted amounts); Moorhead v. Crozer Chester Med. Ctr., 564 Pa. 156, 765 A.2d 786, 790 (2001) (holding that a plaintiff's damages were limited to the amount paid by Medicare and supplemental insurance and accepted as full payment by the plaintiff's medical providers because to award the plaintiff the amounts written off by providers would give the plaintiff a windfall and "would violate fundamental tenets of just compensation").