# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| DIANE L. STAYTON, | : | |
| | : | C.A. No: K12C-04-026 RBY |
| _____Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DELAWARE HEALTH CORP., | : | |
| et. al., | : | |
| | : | |
| Defendants. | : | |

*Submitted: July 18, 2014*
*Decided: September 24, 2014*

***Upon Consideration of Defendants' Motion
for Judgment on the Pleadings
GRANTED***

**ORDER**

William D. Fletcher, Jr., Esquire, Schmittinger & Rodriguez, P.A., Dover, Delaware for Plaintiff.

Norman H. Brooks, Jr., Esquire, Marks O'Neill O'Brien Doherty & Kelly PC, Wilmington, Delaware for Defendants.

Young, J.

**SUMMARY**

Pursuant to Superior Court Civil Rule 12(c), Delaware Health Corp., et. al. ("Defendants") move the Court for an order limiting Diane L. Stayton's ("Plaintiff") past medical expense damages to the amount of $262,550.17, which was paid by the Medicare Trust Fund, instead of allowing Plaintiff to procure the full amount of her recovery ($3,683,797.11). In Plaintiff's Response, Plaintiff requests that this Court rule that Plaintiff be permitted to recover potentially the full amount of her past medical billings, as the reasonable value of medical services provided to her.

The collateral source rule cannot apply in this matter, first, because Plaintiff did not contract with her health provider to accept reduced payments from Medicare for her medical expenses. Second, Medicare is distinctly different from private collateral sources. Third, double recovery by Plaintiff, with Medicare as a collateral source, runs counter to the public purpose of reducing medical expenses and medical liability insurance coverage for healthcare providers. Therefore Defendants' Motion is **GRANTED**.

**FACTS AND PROCEDURAL POSTURE**

Plaintiff's medical negligence claim arises out of an incident wherein Plaintiff, a stroke victim residing at Harbor Health Care and Rehabilitation Center, set her clothing ablaze while smoking. Plaintiff was wheelchair bound due to paralysis of one of her arms and one of her legs. Defendants' agent provided Plaintiff with a cigarette lighter, and allowed her to wheel herself out of the building in order to smoke a cigarette. No supervision was provided to Plaintiff during this activity. In attempting to light a cigarette with her one functioning arm, Plaintiff's clothes caught

on fire, and she sustained severe burns over many areas of her body. Plaintiff's injuries required hospitalization from May 29, 2010 through November 18, 2010 at three different facilities, including the Crozer Burn Center in Chester, Pennsylvania. There are 245 billings that arose from Plaintiff's care at Crozer Burn Center. During discovery, many of Plaintiff's medical bills were obtained from her providers, which were not located in Delaware.

Plaintiff seeks general compensatory damages for the burns and other injuries that were treated at the Crozer Burn Center as well as special damages, including past medical expenses. Plaintiff's Complaint seeks to recover past medical expenses in the amount of $3,683,797.11, which equals the sum of the total "originally stated" charges from Crozer Burn Center. The Medicare Trust Fund has already paid medical expense damages in the amount of $262,550.17.

Plaintiff's Complaint alleges medical negligence against three individual nurse defendants, and related *respondeat superior* liability claims against the "Legal Entity Defendants," set out in Counts I, II, and III. Count IV alleges a separate cause of action that is not addressed in this motion, but in Defendants' Rule 12(b)(6) motion to dismiss, which has already been dismissed. Defendants filed the instant motion on June 17, 2014. Plaintiff filed a Response in Opposition to Defendants' Motion for Judgment on the Pleadings on July 11, 2014. Oral arguments were held on this matter before this Court on July 18, 2014.

## STANDARD OF REVIEW

Superior Court Civil Rule 12(c) authorizes a party to move for judgment on the pleadings once they are closed, as long as the motion will not delay trial. Such

motions will typically be granted where no material issues of fact remain and the movant is entitled to judgment on the law.[1] The non-moving party is entitled to the benefit of any inference to be drawn from the pleadings.[2] Where even a single set of circumstances under which the non-movant could succeed exists, the motion must be denied.

## DISCUSSION

**I. The collateral source rule does not apply in this matter, because Plaintiff did not contract with her health provider to accept reduced payments from Medicare for her medical expenses.**

Defendants argue that Plaintiff can recover only the amount of expenses paid by Medicare for the services performed at Crozer Burn Center. The collateral source rule provides that a tortfeasor may not benefit from any money the injured party may receive from sources other than the tortfeasor.[3] It is the tortfeasor's responsibility to compensate for the reasonable value of all harm that he or she causes.[4] Further, double recovery by plaintiff is acceptable so long as the source of the payment is not connected to the same tortfeasor.[5]

Although *Mitchell v. Haldar* recognizes the collateral source rule as a "firmly

---

[1] *O'Leary v. Telecom Resources, LLC*, 2011 WL 379300, at *3.

[2] *State ex rel. Biden v. The Camden-Wyoming Sewer and Water Authority*, 2012 WL 5431035 at *2 (Del. Super. 2012).

[3] *Onusko v. Kerr*, 880 A.2d 1022, 1024 (Del. 2005).

[4] *Mitchell v. Haldar*, 883 A.2d 32 (Del. 2005).

[5] *Onusko*, 880 A.2d 1022, 1024.

embedded principle" of Delaware law,[6] the Court's decision in that case was largely influenced by its previous qualification of this rule in *State Farm Mut. Auto. Ins. Co. v. Nalbone.*[7] The *State Farm* Court qualified the collateral source rule with the idea that there is "no reason why a risk-adverse insured may not contract for a double recovery."[8] Among the reasons the *Mitchell* Court allowed the plaintiffs to present evidence of the full value of their medical services was that they had contracted with their private health insurance carrier.[9] Pursuant to this principle, if an injury occurs, an insured plaintiff should be permitted, as a matter of contract law, to receive a double recovery, since that is what he has paid for.[10] Thus, the conditions under which double recovery should be allowed may best be determined by examining the consideration that has been paid.[11] In the instant matter, Plaintiff did not contract with her health provider to accept reduced payments from Medicare for her medical expenses.

The contract law inspired principle articulated in *State Farm*, and followed by *Mitchell*, operates as a limitation on the collateral source rule in that, "the extent to which the collateral source rule should be applied to permit double recovery should

---

[6] 883 A.2d 32, 38.

[7] 569 A.2d 71, 75 (Del. 1989).

[8] *Id*.

[9] 883 A.2d 32, 39.

[10] *Id*.

[11] *Id*.

depend upon the contractual expectations that underlie the collateral source payment."[12] "Such an approach encourages examination of the source of the collateral payment rather than indifference to it."[13] According to *State Farm*, if a Plaintiff has paid consideration "for recovery from a collateral source" then the double recovery is permissible.[14] If, however, the collateral source payments are "received gratis" then such double recovery should be barred.[15] The reasoning behind barring the double recovery is that, "the insured has lost nothing, neither wages nor consideration paid to a collateral source for wage compensation."[16] "Accordingly, the insured has no loss for which his insurer should provide compensation."[17] Plaintiff in the instant matter did not contract for double recovery, meaning that the instant set of facts is distinguishable from those faced by the *Mitchell* Court. Hence, contrary to Plaintiff's arguments, limiting Plaintiff's damages would not require the Court to rule against *Mitchell.*

## 2. Medicare is distinctly different from private collateral sources.

In medical negligence cases, Delaware allows the jury to consider evidence of any and all facts available as to any public collateral source of compensation or benefits payable to the person seeking such damages under 18 *Del. C.* § 6862. However, both Defendants and Plaintiff agree that the instant motion does not

---

[12] *State Farm Mut. Auto. Ins. Co. v. Nalbone*, 569 A.2d 71, 75 (Del. 1989).

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

implicate 18 *Del. C.* § 6862. Hence, the Court does not attempt to apply 18 *Del. C.* § 6862, or resolve the issue of whether the collateral source rule is a rule of evidence or substantive law. Instead, this discussion focuses on the distinction that is made between public and private collateral sources by Delaware courts as well as courts in other jurisdictions to determine whether to limit a plaintiff's damages.

In Plaintiff's Response, Plaintiff argues that Defendants' claim is not supported by the rulings of the Delaware Supreme Court in *Mitchell* and *Onusko v. Kerr*.[18] Plaintiff argues that, in *Mitchell*, the Delaware Supreme Court rejected defendants' similar claim, and held that a plaintiff's past medical expenses are not limited to the payment made by a private insurer. *Mitchell* also stated that the collateral source rule provides that it is the tortfeasor's responsibility to compensate for the reasonable value of all harm that he causes, and that responsibility is not confined to the net loss that the injured party receives.[19] Plaintiff asserts that *Sweiger v. Delaware Park, LLC*,[20] the only Superior Court decision to address health care provider write-offs when electing to accept Medicare payments, held that plaintiff could recover the full reasonable value of the medical services and not just the amount paid by Medicare.

The *Sweiger* holding is precisely the issue, as framed by Defendants, presently before the Court. *Sweiger* involved a personal injury tort claim in which plaintiff sought to introduce reasonable medical expenses as evidenced by a certain amount of medical billings.[21] Medicare paid only a fraction of these billings, which resulted

---

[18]  880 A.2d 1022 (2005).

[19]  *Mitchell*, 883 A.2d 32, 38.

[20]  2013 WL 6662720 (Del. Super. 2013).

[21]  *Id.*

in a write-off by the health care provider in the remaining amount. Defendant in that case sought to limit plaintiff's medical expense damages to the money actually paid by Medicare, but plaintiff sought the full amount.[22]

In *Sweiger*, the Court ruled that plaintiff's claim would not be limited to the amount actually paid by Medicare.[23] *Sweiger* cited from the *Mitchell* ruling that the Delaware Supreme Court's stance on the collateral source rule is a "firmly embedded" principle,[24] which the Delaware Supreme Court would interpret to be all inclusive, regardless of any potential windfall that might result.[25] Plaintiff contends that there are no post-*Mitchell* or *Onusko* rulings of any court of Delaware that support Defendants' position or challenge the reasoning and holding of the Superior Court in *Sweiger*, the most recent case in Delaware to address the issue at hand.

Plaintiff cites *Sweiger*, then, for the proposition that Medicare payments fall within the collateral source rule, and should not be limited. In that case, Defendants' motion in limine to preclude a plaintiff from introducing medical expenses written off by Medicare was denied.[26] In *Sweiger*, the plaintiff received $134,815.71 worth of medical services, but charges in excess of $59,882.03 were disallowed by Medicare, and the balance was written off.[27] In resolving the motion in limine, the Court in *Sweiger* did not discuss how it determined the worth of the services written off, or

---

[22]  *Id.*

[23]  *Id.*

[24]  *Sweiger*, 2013 WL 6662787 at *2 (Del. Super. 2013).

[25]  *Id.*

[26]  *Id.*

[27]  *Id.*

how a plaintiff incurs damages when Medicare disallows payments in excess of prescribed maximums, bring about a write-off off the balance. Further, *Sweiger's* decision is based on the premise that there is no apparent difference between private health insurance and Medicare, except that Medicare is administered by the federal government.[28] However, this premise is based on an over-simplistic view of Medicare. There are, however, several fundamental differences between Medicare and private collateral sources.

Medicare is a government-sponsored health insurance program for people 65 years old or older who are eligible for Social Security retirement benefits.[29] The program is funded in large part through taxes paid by employers and employees under *FICA* 16 U.S.C. § 310(b). Unlike private insurance, there is no right of subrogation or refund of benefits on a tort recovery for the amount written off under Medicare or Medicaid.[30] The benefits actually paid may be recovered. Unlike private insurance, participation in Medicare is involuntary.[31] One does not freely contract for Medicare benefits the way one obtains private insurance.[32]

Moreover, eligibility for either Medicaid or Medicare does not in any way suggest that a plaintiff bargained with the federal government to receive compensation for fees that were never incurred by plaintiff.[33] One jurisdiction has

---

[28]  *Id.*

[29]  *42 U.S.C. § 1395c.*

[30]  Stephen L. Olson, Pat Wasson, *Is the Collateral Source Rule Applicable to Medicaid and Medicare Writeoffs?* 71 Def. Couns. J. 172, 175 (2004).

[31]  *Id.*

[32]  *Id.*

[33]  *Id.*

explicitly stated that it is unconscionable to allow taxpayers to bear the expense of providing free medical care to a person, and then allow that person to take the windfall of expenses from a tortfeasor.[34] Another jurisdiction has stated that, "the purpose of tort damages is to compensate an injured person for a loss suffered, and only for that."[35] The law attempts to put the plaintiff in a position as close as possible to his position before the tort.[36] Hence, Medicare and Medicaid operate differently than private collateral sources.

**3. Double recovery by Plaintiff, with Medicare as a collateral source, runs counter to the public purpose of reducing medical expenses.**

The collateral source rule is designed to strike a balance between two competing principles of tort law: (1) A plaintiff is entitled to compensation sufficient to make him whole, but no more, and (2) A defendant is liable for all damages that proximately result from his wrong.[37]

A plaintiff who receives a double recovery for a single tort enjoys a windfall, and a defendant who escapes, in whole or in part, liability for his wrong enjoys a windfall.[38] The law must sanction one windfall and deny the other. The law properly

---

[34] *Haselden v. Davis*, 579 S.E.2d 293, 296 (S.C. 2003).

[35] *Harris v. Standard Accident and Ins. Co.*, 297 F.2d 627, 631-32 (2d Cir. 1961).

[36] *Id.*

[37] Stephen L. Olson, Pat Wasson. *Is the Collateral Source Rule Applicable to Medicare and Medicaid Writeoffs?*, 71 Def. Couns. J. 172 (2004), *Brandon HMA Inc. v. Bradshaw*, 809 So.2d 611, 625 (Miss. 2001) (J. Smith, dissenting).

[38] *Mitchell*, 833 A.2d 32, 38 and *Acuar v. Letourneau*, 260 Va. 180, 531 S.E.2d 316, 323 (2000) (citing *Schickling v. Aspinall*, 235 Va. 472, 369 S.E.2d 172, 174 (1988)).

favors the victim of the wrong rather than the wrongdoer.[39] The tortfeasor is required to bear the cost for the full value of his negligent conduct, even if it results in a windfall for the innocent plaintiff.[40]

Defendants rely upon *Rice et. al. v. The Chimes, Inc.,*[41] to argue that the collateral source rule should not apply to the instant matter due to the illusory nature of the write-off. In *Rice*, plaintiff sustained burn injuries that were also treated at Crozer Burn Center.[42] Although the hospital's originally stated charges totaled $883,000, Medicare paid only $59,000, and the remaining $824,000 was written off by the hospital.[43] The Court in *Rice*, decided in 2002, held that the collateral source rule did not apply to the write-off, because it does not apply to write-offs of expenses that are never paid. In making this decision, the Court relied upon *Moorhead v. Crozer Chester Med. Ctr.,*[44] a case in which the Pennsylvania Supreme Court characterized the write-off as an "illusory charge."

Plaintiff contends, accurately enough, that *Rice* was decided before the Delaware Supreme Court rulings of *Mitchell* and *Onusko*. Indeed, Plaintiff argues that the holding in *Moorhead* was rejected by the Delaware Supreme Court in *Mitchell*.

---

[39] *Id.*

[40] *Id.*

[41] C.A. No. 01-03-260 CLS (Del. Super. Oct. 4, 2002).

[42] *Id.*

[43] *Id.*

[44] 564 Pa. 156, 765 A.2d 786 (Pa. 2001).

According to Plaintiff, Defendants urge this Court to follow the Pennsylvania holding in *Moorhead*, even though it allegedly contradicts the *Mitchell* rule of the Delaware Supreme Court. To the contrary, the approach taken by the Court in *Moorhead* does not contradict the holdings of either *Mitchell* or *Onusko*. In *Mitchell*, as stated above, a private collateral source was involved, which distinguishes it from the case at hand.

*Onusko* is distinguished from the instant matter because that case involved an injured plaintiff who did not have health insurance. The collateral source in that case was the group of physical therapists who wrote off a portion of the plaintiff's bills, and accepted a cash payment for each of the plaintiff's medical visits. The Court in *Onusko* relied on The Restatement (2nd) of Torts, § 920(A) for the principle that collateral benefits are not subtracted from the plaintiff's recovery when it is a cash gratuity or a gratuity to the rendering of services.[45] Further, the physical therapists would be considered a private collateral source, which makes *Onusko* factually inapposite to the case at hand.

Next, Plaintiff brings the Court's attention to *Pardee v. Suburban Propane, LLP*,[46] which was decided in 2003, after *Rice*, but prior to *Mitchell*. In *Pardee*, the Delaware Superior Court denied defendants' motion in limine to exclude medical expenses.[47] However, unlike the instant matter, *Pardee* involved payments which plaintiff was statutorily obligated to pay Medicaid pursuant to *Del. Code. Ann. Tit.* 31,

---

[45] *Onusko v. Kerr*, 880A.2d 1022, 1025 (Del. 2005).

[46] 2003 WL 21213413 (Del. Super. 2003).

[47] *Id.*

§ 522(b).[48] This statute provided that, after deduction of attorneys' fees and litigation costs, any funds received from a tortfeasor by an injured plaintiff under Medicaid shall be held by the Department of Health and Social Services.[49]

*Pardee* is factually inapposite because it involves medical expenses paid by both private insurance and Medicaid, not Medicare. Moreover, the issue of excluding medical damages was first raised by a motion in limine on the eve of trial.[50] The trial judge considered the motion as an evidentiary issue in light of the collateral source rule, rather than an issue of whether the write-off constituted an element of damages, because it was extinguished by operation of law.[51]

This Court will take the approach set forth in *Rice*, because the facts of that case are most similar to those in the instant matter. Moreover, even though *Rice* did not involve a medical negligence action, the Court still arrived at the conclusion that a plaintiff's damages should be limited.[52] In *Rice*, the Court found that the collateral source rule was inapplicable to the amounts written off by Crozer hospital, that were not paid by Medicare.[53] The Court reasoned that the collateral source rule does not

---

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] C.A. No. 01-03-260 CLS at *1 (Del. Super. Oct. 4, 2002).

[53] *Id.*

apply to write-offs of expenses that are never paid.[54] Further, *Rice* states that, "healthcare debt is simply extinguished by operation of law when the healthcare provider elects to accept payment of assigned benefits directly from Medicare."[55]

In addition, Defendants' argument that the write-off charge is illusory falls in line with the school of thought that the collateral source rule was never intended to create a windfall or double recovery for a plaintiff. The glaring impact of allowing a plaintiff to recover the written-off portion of the medical expenses is that they are inflated and fictitious damages.[56] Moreover, a tangential danger in permitting recovery of "phantom" damages is the effect upon establishing the base amount of special damages.[57] That combined amount may form a basis to demand and receive additional compensation for less tangible injuries such as pain and suffering.[58]

Defendants' claim that Plaintiff's recovery of medical expenses is limited to the amount paid by Medicare is entirely consistent with a number of decisions from other states, specifically Pennsylvania, California and Florida. The decision in *Moorhead* is consistent with another Pennsylvania case, and a California case that *Moorhead*

---

[54] *Id.*

[55] *Id.* at 4.

[56] Stephen L. Olson, Pat Wasson. 71 Def. Couns. J. 172, 177. *Smithers v. C & G Custom Module Hauling*, 172 F.Supp.2d 765, 778 (E.D. Va. 2000). See also *Goble v. Frohman*, 901 So.2d 830, (Fla. 2009).

[57] *Id.*

[58] *Id.*

relied upon for its holding. *Goodhart v. Penn, R.R. Co.*[59] discussed the underlying purpose of compensatory damages, and stated that a plaintiff may recover expenses that have actually been paid, or those that are "reasonably necessary to be incurred."[60] The Court relied upon the basic principle of tort law that damage awards should be limited to compensation.[61]

*Howell v. Hamilton Meats and Provisions, Inc.*,[62] opined that "reasonable value" should be considered "a term of limitation as opposed to a term of aggrandizement." Further, the Howell Court held that because plaintiff suffered no personal detriment, his pecuniary loss was only that actually paid on his behalf.

The Florida Supreme Court actually considered this issue of limiting evidence of damages with a basis independent of 18 *Del. C.* § 6862 and the collateral source rule. The concurrence in *Goble v. Frohman*[63] reasoned that, when a plaintiff is not obligated to pay the pre-discount amount of his medical bill, he may recover no more than the amount he paid or is obligated to pay.[64] If there is no obligation to pay the medical bill, the write-off does not represent a plaintiff's actual damages. Permitting recovery of the amount billed, under the guise of contemporary damages, would

---

[59]  35 A. 191, 192 (Pa. 1896).

[60]  *Id.*

[61]  *Id.*

[62]  52 Cal.4th 541, 553 (Cal. 4th 2011).

[63]  901 So.2d 830, 833-834.

[64]  *Id.*

permit recovery of illusory or "phantom damages."[65] Another Florida case elaborated upon this principle by stating that allowing inflated damage recoveries to stand without reduction would run counter to the public purpose of reducing health care costs.[66]

In the instant matter, Plaintiff sustained no money damages for past medical expenses other than Medicare's lien. Plaintiff also incurred no pecuniary liability to Medicare other than the lien. This is demonstrated by the fact that there is no record of Crozer Burn Center sending any statement to Plaintiff purporting to demand payment from Plaintiff individually.

Delaware has recognized a tremendous increase in the cost of liability insurance coverage for healthcare providers.[67] Plaintiff should not be able to receive a windfall when she incurred no pecuniary liability. It would go against the public purpose of reducing the costs of medical expenses to allow a plaintiff to benefit from a double recovery when Medicare, a federal government program funded through taxes paid by employers and employees, serves as the collateral source. Hence, limiting Plaintiff's damages is appropriate in this matter.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings is **GRANTED**.

---

[65] *Id.*

[66] *Id.*

[67] Senate Bill No. 578, 1998. Defendants' Motion for Judgment on the Pleadings, Exhibit 4.

**IT IS SO ORDERED**.


         <u>/s/ Robert B. Young</u>
                   J.


RBY/lmc
oc:    Prothonotary
cc:    Counsel
       Opinion Distribution
       File