Conner, J., dissenting.
I respectfully dissent from the majority opinion. Boiled down to its essence, the majority is reversing the trial court's judgment regarding Mr. Cook's capacity because none of the examining committee members performed "a physical examination" or "a mental health examination." Despite the fact that the legislature did not define those terms or the parameters of those examinations, the majority appears to apply a technical definition of those concepts, as one would find in a medical dictionary, rather than using the plain definition gleaned from an ordinary dictionary. See Goble v. Frohman , 901 So.2d 830, 833 (Fla. 2005) ("If a statutory term is not defined, its plain and ordinary meaning generally can be ascertained by reference to a dictionary.").
There are multiple problems with the analysis used by the majority. Section 744.331(3)(a), Florida Statutes (2017), governing the composition of examining committees provides that:
One member must be a psychiatrist or other physician. The remaining members must be either a psychologist, gerontologist, another psychiatrist, or other physician, a registered nurse, nurse practitioner, licensed social worker, a person with an advanced degree in gerontology from an accredited institution of higher education, or other person who by knowledge, skill, experience, training, or education may, in the court's discretion, advise the court in the form of an expert opinion.
Id. The majority states that: (1) "[t]he statute requires that each member of the examining committee examine the prospective ward," and (2) "the examination must include a comprehensive examination ," and quoting the statute that (3) "the comprehensive examination must include, if indicated, [a] a physical examination, [b] a *289 mental health examination, and [c] a functional assessment," but then reaches the incompatible conclusion that "[t]he statute does not require three separate comprehensive examinations-rather, the statute requires a comprehensive examination." (emphases in original).
The properly constructed syllogism would be: if (1) "[t]he statute requires that each member of the examining committee examine the prospective ward," and (2) "the examination must include a comprehensive examination," and (3) "the comprehensive examination must include, if indicated, [a] a physical examination, [b] a mental health examination, and [c] a functional assessment," then each examining committee member must perform "a physical examination," "a mental health examination," and "a functional assessment." However, such a construction of the statute would be absurd. It would be unreasonable to believe the legislature intended for a social worker or "other person" to perform a physical examination or mental health examination as defined by a medical dictionary.
Additionally, in analyzing the requirements of section 744.331(3)(f), Florida Statutes (2017), the majority ignores other subsections of section 744.331(3). For example, section 744.331(3)(c) provides that:
(c) Each person appointed to an examining committee must file an affidavit with the court stating that he or she has completed the required courses or will do so no later than 4 months after his or her initial appointment. Each year, the chief judge of the circuit must prepare a list of persons qualified to be members of an examining committee.
§ 744.331(3)(c), Fla. Stat. (2017) (emphasis added). Likewise, the majority ignores section 744.331(3)(d), which provides that:
(d) A member of an examining committee must complete a minimum of 4 hours of initial training . The person must complete 2 hours of continuing education during each 2-year period after the initial training. The initial training and continuing education program must be developed under the supervision of the Office of Public and Professional Guardians, in consultation with the Florida Conference of Circuit Court Judges; the Elder Law and the Real Property, Probate and Trust Law sections of The Florida Bar; and the Florida State Guardianship Association .
§ 744.331(3)(d), Fla. Stat. (2017) (emphases added).
Based on subsections (3)(c) and (d), I presume the trial court appointed properly trained persons to act as the examining committee. Thus, I have difficulty concluding that all three examining committee members failed to act as properly trained. I suppose that one could conclude that all three members missed the mark if one assumes that the legislature intended "a physical examination" or "a mental health examination" as referring to concepts in a medical dictionary, rather than an ordinary dictionary.
I find section 744.331(3)(f) ambiguous. To expose the ambiguity, both subsections (3)(e) and (f) must be considered together:
(e) Each member of the examining committee shall examine the person. Each examining committee member must determine the alleged incapacitated person's ability to exercise those rights specified in s. 744.3215. In addition to the examination, each examining committee member must have access to, and may consider, previous examinations of the person, including, but not limited to, habilitation plans, school records, and psychological and psychosocial reports voluntarily offered for use by the alleged incapacitated person. Each member of the examining committee must file his or *290 her report with the clerk of the court within 15 days after appointment.
(f) The examination of the alleged incapacitated person must include a comprehensive examination, a report of which shall be filed by each examining committee member as part of his or her written report. The comprehensive examination report should be an essential element, but not necessarily the only element, used in making a capacity and guardianship decision. The comprehensive examination must include, if indicated :
1. A physical examination;
2. A mental health examination; and
3. A functional assessment.
If any of these three aspects of the examination is not indicated or cannot be accomplished for any reason, the written report must explain the reasons for its omission.
§§ 744.331(3)(e) and (f), Fla. Stat. (2017) (emphases added).
It is unclear to me the majority's view of the meaning of "if indicated." To me, the obvious question is: "if indicated" by whom ? Possibly the majority is of the view that "if indicated" refers to "by the circumstances ," but that in turn leads to the question of "as determined by whom "-the trial judge or the individual examining committee member?
I contend the legislature meant by the "if indicated" language that the trial judge is to give guidance to the examining committee as to the extent of the examinations to be conducted pursuant to the statute. Such an interpretation makes sense, if one considers that a family member may petition for the appointment of a limited or plenary guardian, depending on the circumstances of the alleged incapacitated person. For example, a quadriplegic may need a limited guardian due to physical incapacities, but a mental health assessment or functional assessment may not be necessary, based on the petition filed. I doubt that in such a circumstance the legislature intended that the quadriplegic would have to undergo the demeaning experience of a mental health examination or a functional assessment. Additionally, such an interpretation of the "if indicated" language would allow the trial court to direct a medical doctor to perform a physical examination (within the meaning of a medical dictionary) and a psychiatrist or psychologist to perform a mental health examination (within the meaning of a medical dictionary), and would more logically explain why all three examining committee members do not have to perform all three "aspects of the examination."
If I am correct that the statutory language "if indicated" was meant for the judge to give guidance as to the extent of the capacity evaluation to be performed, the order appointing the examining committee in this case must be considered. The order stated:
Within a reasonable time after service of this Order, each [examining committee] member is required to secure the presence of JAMES S. COOK, the alleged incapacitated person, and to make such examination of her [sic] as will enable them to ascertain thoroughly her [sic] mental and physical condition at the time of the examination. If they consider her [sic] to be incapacitated, they shall determine whether she [sic] requires a Plenary or Limited Guardianship. They shall determine the alleged incapacitated person's ability to exercise those rights which the Petition to Determine Incapacity has requested to be removed.
(emphasis added). It does not appear from the language of the order that the trial judge "indicated" that a physical or mental health examination, as defined by a medical dictionary, was needed.
*291 The trial judge considered extensive evidence in this case. Not only did the trial court receive testimony from all three examining committee members, but also testimony from Mr. Cook's siblings and Mr. Cook. The trial court also considered, without objection, the hearsay testimony regarding Mr. Cook's past medical and mental health history, as well as numerous pictures of his apartment. The trial court specifically found the testimony of Mr. Cook provided clear and convincing evidence of his incapacity. The evidence clearly showed that Mr. Cook was not taking his mental health medication, which led him to create a situation causing a fire in his apartment. When the first responders arrived, he had to be Baker Acted. At that time, he was malnourished, living in squalor, and did not understand what was going on. The majority is apparently impressed by Mr. Cook's seemingly coherent testimony at the hearing (arguably after receiving some benefit from the Baker Act), but the trial court's order makes it clear the trial court was not so impressed. The trial court's order makes it clear that trial court determined that Mr. Cook had no insight as to the circumstances leading to his being Baker Acted. In my view, it would be reweighing the evidence from a cold record to reverse the trial court.
For the above reasons, I respectfully dissent.
ON APPELLANT'S MOTION FOR REHEARING AND/OR CLARIFICATION AND NON-PARTY JUDGES' MOTION FOR CLARIFICATION
Gross, J.
We grant appellant's motion for rehearing and/or clarification. We agree that the instruction in the majority opinion that Cook's status "remain unchanged pending the outcome of the incapacity proceedings on remand" is inconsistent with this court's finding that the judgment placing Cook in a plenary guardianship was not authorized by the applicable statute. Appellee does not oppose the motion. Accordingly, we strike the last sentence of the majority opinion.
The Chief Judges of the Eleventh, Fifteenth, and Seventeenth Judicial Circuits have moved for clarification concerning the extent of the physical examination that must be undertaken by the examining committee. We treat the motion as an amicus filing. See Fla. R. App. P. 9.370(a). Neither party has filed a response to the motion.
Neither the statute nor the majority opinion places the onus on any individual member of the committee to perform the indicated parts of the examination. The three aspects of a comprehensive examination identified by the legislature may be performed by qualified persons who are not members of the examining committee. As do experts in court, the members of the committee may rely on these reports to satisfy the comprehensive examination requirement of the statute. As the statute mandates, if any part of a comprehensive examination is omitted, the committee member must explain the reason for the omission. This procedure will comply with the statute while giving the circuit judges the critical information needed to decide the capacity issue.
We are sensitive to the point of the Chief Judges that funding may be inadequate to comply with the statutory mandate. The legislature is the only proper forum to weigh funding considerations against the interests of the various stakeholders in a guardianship.
Klingensmith, J., concurs.
Conner, J., dissents with opinion.