Charles W. ONUSKO, Defendant
Below, Appellant,

v.

Andrew S. KERR, Plaintiff
Below, Appellee.

No. 503,2004.

Supreme Court of Delaware.

Submitted: June 22, 2005.
Decided: Aug. 1, 2005.

Jeffrey A. Young, Esquire, of Young &
McNelis, Dover, Delaware, for Appellant.

Jeffrey J. Clark, Esquire, of Schmitting-
er & Rodriguez, P.A., Dover, Delaware, for
Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en banc.

BERGER, Justice.

This is a personal injury action arising from a motor vehicle accident. Appellant conceded liability, but argues that two of the trial court's rulings resulted in an excessive jury verdict. First, appellant contends that the Superior Court abused its discretion when it allowed an expert to opine on appellee's future medical needs based on "boilerplate" averages. Second, appellant argues that the trial court erred in allowing the jury to assess damages based on the amount charged for certain treatments rather than the amount appellee actually paid, which was a reduced "cash payment" price. We conclude that the Superior Court acted well within its discretion and correctly applied the law. Therefore, we affirm.

Factual and Procedural Background

Andrew S. Kerr, who was driving a motorcycle, struck the side of Charles W. Onusko's truck after Onusko drove through an intersection without stopping at the stop sign. Onusko admitted liability, but contested the nature and extent of the injuries Kerr allegedly suffered. At trial, Kerr's orthopedic surgeon, Dr. Eric Schwartz testified: (i) that Kerr suffered a herniated disc, two protruding discs, and soft tissue injury in the collision; (ii) that those injuries resulted in a permanent partial impairment to Kerr's cervical spine; and (iii) that, on average, Kerr will need 12—14 physical therapy sessions, 2–3 prescription medicines, and 1–2 visits to his doctors each year for the rest of his life. On cross-examination, Onusko established

that Schwartz uses the same prediction of a patient's future medical needs for anyone who has a permanent injury, regardless of the age and condition of the patient, or the nature of the injury. But Onusko did not present any expert evidence to contradict Schwartz's opinions, and the jury awarded Kerr $75,000. The Superior Court denied Onusko's motion for a new trial, and this appeal followed.

Discussion

■ Onusko argues that Schwartz's assessment of Kerr's future medical needs should have been excluded from evidence because it was nothing more than a boilerplate compilation of averages that Schwartz assumes for all patients who are permanently injured. Onusko refers to the recent decisions in *Eskin v. Carden* [1] and *Mason v. Rizzi* [2] in support of his claim that such generalized information is not admissible. His argument fails for two reasons. First, although the numbers Schwartz used were averages, he testified that those averages applied to Kerr:

Q. Now, Doctor, as far as physical therapy, for instance, how many sessions on average per year will [Kerr] need?

A. Usually for therapy ... twelve to fourteen visits a year is what we would say is an average.

Q. Again, would those numbers be accurate every single year or is that an average? I mean, how do you estimate that?

A. No. I mean, in my opinion, I think it's an average. He may have theoretically a great year and not need it. He may have a year that he may triple that. It's hard to say, but if you wanted to quantify an average, I think this is a very con-

1. 842 A.2d 1222 (Del.2004).

2. 843 A.2d 695 (Del.2004).

servative average for someone like [Kerr].[3]

In short, Schwartz conceded that he could not predict the future, but he testified, to a reasonable degree of medical probability, that Kerr would need the number of treatments specified in his report.

*Eskin* and *Mason* are inapposite because the experts in those cases were biomechanical engineers who were asked to testify about the forces involved in the accidents, and would have opined that those forces could not have caused the accident victims' injuries. In both cases, the accident victims had pre-existing medical conditions that arguably made them more susceptible to injury than a "normal" person. But the biomechanical experts had not analyzed the impact of those pre-existing medical conditions, and they had no basis on which to assert that their conclusions remained valid when applied to those particular accident victims. As a result, this Court held that, "the trial judge could properly conclude that there was a danger that the jury would be confused or misled into believing that [the accident victims] fell within the "field's" "one-size-fits-all" statistical range." [4]

Here, by contrast, the expert was Kerr's treating physician. From his experience treating patients with permanent injuries, Schwartz apparently has determined that all patients, on average, require the same follow-up long term care. As a result, he uses the same averages to predict his patients' future medical needs. Because he is a medical expert, Schwartz was qualified to reach that conclusion. Thus, there was

no error in the trial court's decision to allow his testimony.

■■■ Onusko next argues that the trial court misapplied the collateral source rule when it allowed the jury to consider the normal charge of $534 for each physical therapy visit, when Kerr only paid $282 per visit.[5] The lower price was a discount offered by the physical therapist because Kerr paid in cash. The collateral source rule provides that a tortfeasor may not benefit from any money the injured party may receive from sources other than the tortfeasor.[6] "Double recovery by a plaintiff is acceptable so long as the source of such payment is unconnected to the tortfeasor." [7]

We conclude that the Superior Court correctly applied the collateral source rule. The "collateral source" was Brown & Associates (B & A), the physical therapists. B & A billed Kerr $534 per visit. Because Kerr did not have health insurance, however, B & A wrote off a portion of those bills and accepted a cash payment of $282 per visit. The *Restatement (Second) of Torts* explains the applicable principle and provides an apt illustration:

§ 920A. Effect of Payments Made to Injured Party

\* \* \*

(2) Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.

---

3. Appellee's Appendix, B 41–42.

4. *Eskin v. Carden,* 842 A.2d at 1231.

5. Onusko does not argue that the "normal" charge of $534 per visit is unreasonable. His only argument is that the collateral source rule was not applicable.

6. *Farrell v. Gordon,* 770 A.2d 517 (Del.2001).

7. *Id.* at 520 (Citing *Yarrington v. Thornburg,* 205 A.2d 1, 2 (Del.1964)).

Comment:

\* \* \*

c. The rule that collateral benefits are not subtracted from the plaintiff's recovery applies to the following types of benefits:

\* \* \*

(3) Gratuities. This applies to cash gratuities and to the rendering of services. Thus the fact that the doctor did not charge for his services or the plaintiff was treated in a veterans hospital does not prevent his recovery for the reasonable value of the services.[8]

Kerr was entitled to be compensated for the reasonable value of B & A's services, and the evidence of that value was the billed price of $534 per visit.[9]

### Conclusion

Based on the foregoing, the decision of the Superior Court denying Onusko's motion for a new trial is affirmed.

**8.** *Restatement (Second) of Torts,* § 920A (1979).

**9.** *See, also, Lindholm v. Hassan,* 369 F.Supp.2d 1104 (D.S.D.2005).