# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

NATHANIEL LACY, III,

   Plaintiff,

  v.

BAYHEALTH MEDICAL
CENTER, INC.,

   Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

C.A. No. K20C-10-005 NEP

Submitted: March 11, 2022
Decided: May 25, 2022

## MEMORANDUM OPINION AND ORDER

*Upon Defendant's Motion in Limine to Limit Medical Expense Damages to Amounts Actually Paid by TRICARE Insurance*

## GRANTED IN PART and DEFERRED IN PART

Ronald G. Poliquin, Esquire, The Poliquin Firm, LLC, Dover, Delaware, *Attorney for Plaintiff.*

James E. Drnec, Esquire, and Katherine J. Sullivan, Esquire, Wharton Levin Ehrmantraut & Klein, P.A., Wilmington, Delaware, *Attorneys for Defendant.*

**Primos, J.**

Before this Court is the Motion *in Limine* to Limit Medical Expense Damages to Amounts Actually Paid by TRICARE Insurance (hereinafter the "Motion") of Defendant Bayhealth Medical Center, Inc. (hereinafter "Defendant"). This is a medical malpractice case in which Plaintiff Nathaniel Lacy, III (hereinafter "Plaintiff"), alleges that Defendant failed to timely diagnose and treat his arm fracture following a motorcycle accident in 2018. Plaintiff seeks to introduce as damages the amounts billed by his medical providers rather than those actually paid by his government health insurance carrier, TRICARE. For the following reasons, Defendant's Motion is **GRANTED IN PART and DEFERRED IN PART**.

## I. LEGAL AND FACTUAL BACKGROUND

In the tort context, the collateral source rule (hereinafter "the CSR") negotiates a balance between two contending principles: "(1) a plaintiff is entitled to compensation sufficient to make him whole, but no more; and (2) a defendant [*i.e.*, the tortfeasor] is liable for all damages that proximately result from the wrong."[1] When a plaintiff receives compensation for injury from a source independent of the tortfeasor (*i.e.*, a collateral source), the plaintiff will receive a windfall if the defendant is also made to pay the plaintiff the full amount of damages caused by the defendant's negligence. On the other hand, if the defendant is allowed to reduce its liability by the amount received from the collateral source, the defendant will receive a windfall because its liability will be reduced through no positive action of its own. Due to the "quasi-punitive nature" of tort liability, the CSR ultimately resolves this dilemma by allocating the windfall to the plaintiff rather than to the defendant.[2]

---

[1] *Stayton v. Delaware Health Corp.*, 117 A.3d 521, 526 (Del. 2015).

[2] *Id.* at 527 (quoting *Mitchell v. Haldar*, 883 A.2d 32, 38 (Del. 2006)). As the *Stayton* Court noted, the "windfall" problem, with regard to collateral payments made to plaintiffs, is ameliorated by the fact that insurers, whether private or public (*e.g.*, Medicare or Medicaid), often enjoy subrogation rights, or access to liens, for payments made to injured parties. *Id.* at 527 n.26.

The analysis becomes more complicated, however, when attention turns to medical provider *write-offs* of billed amounts (as opposed to collateral *payments* for medical expenses). Specifically, in the context of both public and private insurance, as well as in the private payer context, large portions of medical bills are often "written off" by providers as they either agree to accept, or are required by law to accept, much less than the billed amounts as compensation for medical services rendered. In *Onusko v. Kerr*,[3] the Delaware Supreme Court approved application of the CSR in the private payer context by affirming the lower court, which had allowed the plaintiff to introduce the provider's bills as evidence of damages rather than the lower amounts actually paid by the plaintiff.[4] In *Mitchell v. Haldar*,[5] the Supreme Court found application of the CSR appropriate for write-offs in the private insurance context.[6]

More recently, however, the Supreme Court has recognized that application of the CSR to provider write-offs is not appropriate in all situations. Specifically, the Court has carved out a clear exception when the benefit of the write-off "accrues to the taxpayers."[7] To explore this carve-out, this Court will look to two Delaware Supreme Court rulings, *Stayton v. Delaware Health Corporation* (cited *supra*) and *Smith v. Mahoney*,[8] which together provide the framework for looking at government-sponsored health insurance programs through the lens of the CSR.

In *Stayton,* the Supreme Court weighed the CSR's applicability to medical expenses that were written off by the plaintiff's medical providers as federally mandated by the Medicare program. The Court made three succinct findings:

---

[3] 880 A.2d 1022 (Del. 2005).
[4] *Id.* at 1024–25.
[5] 883 A.2d 32 (Del. 2006).
[6] *Id.* at 40.
[7] *Stayton*, 117 A.3d at 529.
[8] 150 A.3d 1200 (Del. 2016).

(1) the plaintiff "[would] not be required to pay medical expenses above the amount paid by Medicare," and therefore allowing her to recover for those expenses would be compensating her for "harm that will never occur"[9];

(2) "provider write-offs are not payments made to or benefits conferred on the injured party"[10]; and

(3) the federal government "acted out of consideration for the taxpayers" in setting reimbursement rates.[11]

In *Smith,* the Supreme Court weighed the CSR's applicability to medical expenses that were written off by plaintiff's medical provider pursuant to the Medicaid program. Here, the Supreme Court made the following findings:

(1) the difference between the provider's standard rate and the government's fee for services "is paid by no one, and is not needed to make the plaintiff whole"[12];

(2) the choice to accept the lower government rate "is better characterized as a business decision made with the provider's economic interest in mind rather than a benefit intended for the patient"[13]; and

(3) the reduced cost of services "primarily benefit[s] taxpayers instead of the plaintiff."[14]

Thus, in the Supreme Court's view, two primary considerations render the CSR inapplicable to write-offs in the context of government-funded insurance

---

[9] *Id.* at 534.
[10] *Id.* at 531.
[11] *Id.*
[12] 150 A.3d at 1207.
[13] *Id.*
[14] *Id.*

programs: (1) compensating a plaintiff for such write-offs would not serve to make the plaintiff whole because those amounts will never be paid by anyone, and (2) such write-offs primarily benefit taxpayers, not injured plaintiffs.

In this case, the Court is asked to determine whether or not TRICARE fits into this carve-out. TRICARE is a Department of Defense healthcare program for active duty servicemembers, active duty family members, retirees and retiree family members, survivors, and certain former spouses worldwide.[15] TRICARE utilizes the Military Health System (including military medical treatment facilities and military pharmacies) along with a network of civilian healthcare professionals to provide access to the "full array of high-quality health care services while maintaining the capability to support military operations."[16] By law, TRICARE rates are tied to Medicare allowable charges.[17]

Plaintiff was 36 years old when he suffered a motorcycle accident on July 7, 2018. At that time he was an active-duty Air Force member assigned to Dover Air Force Base, though he has since retired from military service. He was initially treated at Bayhealth Medical Center in Dover. His medical malpractice claim relates to a lack of imaging studies done on his left forearm, concerning which he had voiced

---

[15] Def.'s Mt. in Lim., Ex. C at 24.

[16] *Id.*

[17]*See* TRICARE Allowable Charges, Health.mil, https://www.health.mil/Military-Health-Topics/Access-Cost-Quality-and-Safety/TRICARE-Health-Plan/Rates-and-Reimbursement/TRICARE-Allowable-Charges (last visited May 17, 2022) ("These charges are the maximum amounts TRICARE is allowed to pay for each procedure or service and are tied by law to Medicare's allowable charges."). The Court takes judicial notice of the content on this government site, and those cited *infra*, as they can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." D.R.E. 201(b)(2)); s*ee Stafford v. State*, 2012 WL 691402, at *1 (Del. Mar. 1, 2012) (taking judicial notice of contents of a state government website); *In re Vaxart, Inc. S'holder Litig.*, 2021 WL 5858696, at *10 (Del. Ch. Nov. 30, 2021) (taking judicial notice of various reports from government websites); *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 346 (3d Cir. 2006) (taking judicial notice of a Congressional Budget Office report to support the fact that Pension Benefit Guaranty Corporation's financial health had deteriorated over time).

multiple complaints regarding pain, that would have allegedly indicated a fracture. According to Plaintiff, he has incurred permanent impairment to his arm as a result. Plaintiff was afforded health insurance coverage under TRICARE for all relevant time periods.

## II. PARTIES' CONTENTIONS

Defendant argues that two characteristics of TRICARE render it subject to the holdings in *Stayton* and *Smith*: 1) TRICARE is funded through the Department of Defense, *i.e.*, solely from federal taxpayer dollars; and 2) provider write-offs under TRICARE inure to the benefit of taxpayers, not TRICARE members.

Plaintiff argues that three characteristics of TRICARE place it beyond the scope of *Stayton* and *Smith*: 1) TRICARE is not a "public option," *i.e.*, one must be either a military member or spouse/dependent to "earn" insurance; 2) TRICARE, for retired military veterans who have completed at least twenty years of service, requires cost-sharing akin to private insurance; and 3) public policy dictates that TRICARE be treated the same as private insurance for purposes of the CSR, because otherwise individuals would be penalized for serving in the military.

## III. DISCUSSION

### A. Plaintiff's proffered distinguishing characteristics are not persuasive in light of *Stayton* and *Smith*.

The Court finds unpersuasive Plaintiff's arguments that TRICARE is distinct from Medicare and Medicaid as to those considerations relevant to the applicability of the CSR to provider write-offs. First of all, Plaintiff's argument that TRICARE is not a "public option" draws the wrong lesson from the holdings in *Stayton* and *Smith*. The Supreme Court focused on who pays for the insurance, as well as who ultimately benefits from the provider write-offs that go along with it. Like Medicare

and Medicaid, TRICARE is fiscally dependent on taxpayer funds,[18] and thus the contracts that the government secures with civilian healthcare providers for discounted value, *i.e.*, write-offs, benefit U.S. taxpayers as a whole rather than military service members in particular. Thus, the "public option" argument raised by Plaintiff is unpersuasive, as Delaware jurisprudence focuses on the public *nature* of the funds rather than the *mechanism* to qualify for them.[19]

Secondly, the fact that TRICARE provides for cost sharing does not differentiate it from Medicare or Medicaid. In fact, both Medicare and Medicaid require cost sharing. For Medicare, the "standard Part B premium amount is $170.10."[20] In addition, there is both a deductible ($233) and co-insurance or a co-pay (20% of Medicare-Approved Amount).[21] This cost sharing is illustrated by the fact that Medicare pays 85 percent of the total spending on covered services, and the beneficiaries—for services covered under Part A and Part B—are responsible for the remaining 15 percent.[22] For Medicaid, although cost sharing is significantly lower,

---

[18] Tara O'Neill Hayes, *TRICARE: The Military's Health Care System*, Aug. 27, 2015 (attached to Pl.'s Ltr. to Ct. dated March 11, 2022 (D.I. 55)) at 3.

[19] By contrast, the mechanism to qualify, and retain qualification, for TRICARE coverage is an important consideration in analyzing whether future costs should be reduced by the amount TRICARE will pay versus the standard charges, as discussed *infra*. *Compare Russum v. IPM Dev. P'ship LLC*, 2015 WL 4594166, at *3 (Del. Super. July 15, 2015) (finding that because Medicare enrollment is mandatory, and eligibility is acquired based on age, disability, and work history, future medical expenses must be limited to amount projected to be paid by Medicare) *with Smith,* 150 A.3d at 1204 (finding that "given the uncertainty of Medicaid coverage," due to its being tied to financial circumstances, the amount Medicaid might pay in the future "does not limit the recovery of future medical expenses").

[20] Medicare Costs at a Glance, Medicare.gov, https://www.medicare.gov/your-medicare-costs/medicare-costs-at-a-glance (last visited May 17, 2022).

[21] *Id.*

[22] Cong. Budget Off., CBO's Medicare Beneficiary Cost-Sharing Model: A Technical Description, (Working Paper, Oct. 2019), at 4, available at https://www.cbo.gov/system/files/2019-10/55659-CBO-medicare-beneficiary-cost-sharing-model.pdf.

there is nonetheless required cost sharing that is capped at "5% of household income."[23]

By comparison, TRICARE's cost sharing is prescribed by statute, 10 U.S.C. § 1075a,  and entails zero cost for active-duty military members, and an annual enrollment fee for retirees of $350 per individual and $700 per family with a range of 30-dollar to 150-dollar co-pays for different types of medical treatment visits.[24] The cost sharing for military retirees accounts for  "4-5 percent for individuals and 5-6 percent for families" of the total cost of retirees' care.[25]  Therefore, TRICARE is not distinguishable from Medicare or Medicaid on that basis.

Plaintiff's public policy arguments are unavailing as well.  The question of whether the CSR is applicable to provider write-offs considers only whether the write-off benefits the injured plaintiff or some other party (*e.g.*, the taxpayer), and whether the amount represented by that write-off is needed to make the injured plaintiff whole.  It has nothing to do with whether the injured plaintiff is deserving in some sense unrelated to the injury itself.  Indeed, similar arguments could be made about whether plaintiffs who are older (*i.e.*, Medicare beneficiaries) or poorer (*i.e.*, Medicaid recipients) are being treated unfairly by depriving them of the windfall that privately insured plaintiffs or private payers may receive under the CSR.  Moreover, as a public policy matter, the public wants to provide affordable insurance to military

---

[23] Medicaid.gov, Overview of Medicaid Cost Sharing and Premium Requirements, (Nov. 25, 2014), available at https://www.medicaid.gov/state-resource-center/mac-learning-collaboratives/learning-collaborative-state-toolbox/downloads/cost-sharing-premium-requirements.pdf; CMS.gov, Deficit Reduction Act Important Facts for State Policymakers, (Feb. 21, 2008), available at https://www.cms.gov/Regulations-and-Guidance/Legislation/DeficitReductionAct/Downloads/Costsharing.pdf.

[24] It is unclear from the record what form of TRICARE insurance Plaintiff had at the time of his treatment (*i.e.*, TRICARE Select or TRICARE Prime).  Another statute, 10 U.S.C. § 1075, deals with TRICARE Select, and lays out similar cost-sharing values, albeit increased.  In either case, the analysis remains the same, as every form of TRICARE includes some form of cost sharing.

[25] Hayes, *TRICARE: The Military's Health Care System*, (D.I. 55) at 3.

members,[26] and potentially increasing liability amounts for injured plaintiffs, above and beyond payments received or owed in subrogation, could adversely affect the government's efforts to procure low-cost coverage for service members to the disadvantage of taxpayers.[27]

### B. TRICARE is equivalent to Medicaid and Medicare for purposes of provider write-offs, and Delaware jurisprudence is clear that the CSR does not apply to TRICARE write-offs.

It is evident that the Supreme Court's reasoning in *Stayton* and *Smith* applies not only to the government-funded health insurance programs addressed in those decisions, but to TRICARE as well. TRICARE is a government-funded health insurance program intended to provide active and retired military members affordable healthcare. Like Medicare and Medicaid, TRICARE has subrogation rights against third-party tortfeasors to recover cost of care back to the program, *i.e.*, to diminish the hit on taxpayers' bottom lines. This authority to assert a subrogation claim is derived from the Federal Medical Care Recovery Act (the "FMCRA"), 42 U.S.C. §§ 2651-2653, which "authorizes recovery of the reasonable value of medical care furnished or paid for by the United States under circumstances creating tort liability for such medical care in a third party."[28] In this case, the federal government

---

[26] There is little doubt that a military member receives a benefit of cost savings by using TRICARE versus traditional health insurance. Plaintiff's article provided to the Court explains that "[b]etween 1999 and 2013, the annual enrollment fee for TRICARE Prime rose 17 percent; by contrast, annual premiums for private sector workers rose 196 percent over the same period." *Id.*

[27] *Cf. Stayton v. Delaware Health Corp.*, 2014 WL 4782997 (Del. Super. Sept. 24, 2014), at *6 (noting that allowing plaintiffs to recover amount of Medicare write-offs could exacerbate increased medical expenses and costs of liability insurance for healthcare providers).

[28] Nathaniel C. Fick, Jr., *Military/VA/TRICARE Liens and Litigation Considerations*, 2013 Trial Rep. (Md.) 21, 22 (2013); 32 C.F.R. § 199.12 ("(a) . . . This section deals with the right of the United States to recover from third-parties the costs of medical care furnished to or paid on behalf of TRICARE beneficiaries. . . . (b)(2)(ii) . . . In cases in which the right of the United States to collect from an automobile liability insurance carrier is premised on establishing some tort liability on some third person, matters regarding the determination of such tort liability shall be governed

had sent Plaintiff a "demand letter or a lien letter," which was forwarded to Defendant, for the amount of medical benefits provided—*i.e.*, the amount actually paid.[29]

Like Medicare and Medicaid, TRICARE negotiates its contracts with outside providers and requires that its providers "must be Medicare participating providers."[30] In addition, TRICARE's maximum allowable charges are directly tied to Medicare's allowable charges, thus piggybacking on the negotiating power of the government. This negotiating power is reflected in the reduction of costs for Plaintiff's medical treatment. During oral argument, it was represented to the Court that TRICARE had paid approximately $20,000 for Plaintiff's medical expenses versus the billed amount of approximately $98,000, representing a $78,000 write-off. As in *Stayton* and *Smith*, this amounts to a substantial write-off for Plaintiff's care pursuant to his TRICARE coverage.

The negotiated reduced charge fits into the two factors expressed by the Supreme Court in *Stayton* and *Smith*. First, Plaintiff did not pay the amount of the write-off, nor will he ever be required to do so. Second, the benefit accrues, most prominently, to the taxpayers, as they fund the majority of TRICARE's expenses. For these reasons, the Court finds that the CSR is inapplicable for the same reasons stated in *Stayton* and *Smith,* and Plaintiff will be allowed to show a potential jury only TRICARE's paid amount for his past medical expenses.

---

by the same substantive standards as would be applied under the FMCRA including reliance on state law for determinations regarding tort liability . . . .").

[29] Oral Arg. Tr. at 4:21–5:2 (March 11, 2022).

[30] 32 C.F.R. § 199.17(p)(4)(iv) ("All preferred network providers must be Medicare participating providers, unless this requirement is waived based on extraordinary circumstances. This requirement that a provider be a Medicare participating provider does not apply to providers who not eligible [sic] to be participating providers under Medicare.").

## C. The Court finds that future expense reductions are not ripe for determination.

For military retirees, TRICARE is a benefit earned, but not required to be maintained, based upon years of service. Plaintiff received the continued benefit upon retirement based upon his twenty years of service (*i.e.*, from 2000 to 2020).[31] Unlike Medicare, TRICARE is an optional benefit that does not penalize a beneficiary for re-enrolling or enrolling late.[32] In addition, if Plaintiff were to venture into private employment, which seems possible given his age, and receive employment-sponsored healthcare benefits, TRICARE would become a secondary payer.[33] Finally, TRICARE begins to co-exist with Medicare when a military retiree meets the eligible age to become a Medicare recipient.[34] In such cases, Medicare pays first, and TRICARE becomes a secondary payer.[35]

Given such coordination between different health plan options, and the lack of factual detail in the briefing regarding this issue as it relates to Plaintiff's

---

[31] *See* Retired Service Members and Families, Tricare.mil, https://tricare.mil/Plans/Eligibility/RSMandFamilies (last visited May 17, 2022).

[32] *Compare* Part B Late Enrollment Penalty, Medicare.gov, https://www.medicare.gov/your-medicare-costs/part-b-costs/part-b-late-enrollment-penalty (last visited May 17, 2022) (explaining that Medicare mandates a potential 10% penalty in the form of an increased monthly premium for late enrollment) *with* TRICARE Commc'ns, Enrolling and Disenrolling from TRICARE, (April 1, 2021), https://newsroom.tricare.mil/Articles/Article/2558951/enrolling-and-disenrolling-from-tricare (outlining availability of disenrollment to retirees without stating that a penalty would be incurred).

[33] David Slaughter, ¶ 814 *Coordinating TRICARE and Medicare*, 2013 WL 12400468 ("For individuals with current employment status under a group health plan, the plan will be the first payer, followed by Medicare and then TRICARE as the tertiary payer." (internal quotations omitted)).

[34] *See* Becoming Medicare-Eligible, Tricare.mil, https://www.tricare.mil/medicare (last visited May 17, 2022).

[35] Slaughter, *Coordinating TRICARE*, 2013 WL 12400468 ("TRICARE is secondary to other third-party payers, including Medicare supplemental plans . . . In coordinating benefits with Medicare, TRICARE, as the secondary plan, will reimburse the difference between the billed amount (or the amount the provider is required to accept as full payment) and what the other insurance coverage paid, if that difference is less than what TRICARE would have paid if no other coverage existed.").

eligibility, the Court does not consider the issue ripe for decision.[36]  Accordingly, the Court will defer judgement on the application of the CSR to future expenses for a later time.

## IV. CONCLUSION

For the foregoing reasons, the Court holds that evidence of medical expenses of past treatment is limited to amounts actually paid by TRICARE, and **GRANTS** the Motion in that regard;  as to future expenses, the Court **DEFERS** the motion until the factual record is more comprehensive.

**IT IS SO ORDERED.**

_____
Noel Eason Primos, Judge

NEP:tls
*Via File & ServeXpress*
oc:   Prothonotary
cc:   Counsel of Record

---

[36] *Cf. Harvey v. United States*, 2013 WL 2898785, at *3 (W.D. Ky. June 13, 2013) ("The court does not have any information whether and to what extent [the plaintiff] may be entitled to TRICARE benefits in the future, **nor whether she wishes to avail herself of such benefits.** The United States may establish that these benefits would continue to be available. The plaintiff may, in turn, **establish unavailability, inadequacy, or disinclination to utilize the facilities and benefits available for future care.** All of these considerations would play a role in making an award of future damages, if such an award should be appropriate." (emphasis supplied)).